Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONRICK SANDERSON, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff*,<br><br>v.<br><br>WHOOP, INC.,<br><br>     *Defendant*. | Case No. 3:23-cv-05477<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**Table of Contents**

I.      Introduction. ........................................................................................................... 1

II.     Parties. ................................................................................................................... 2

III.    Jurisdiction and Venue. ......................................................................................... 2

IV.     Facts. ..................................................................................................................... 2

        A.      California's Automatic Renewal Law ........................................................ 2

        B.      Whoop violates the Automatic Renewal Law ........................................... 4

        C.      Whoop misled and injured Mr. Sanderson ............................................. 17

V.      Class Action Allegations ..................................................................................... 19

VI.     Claims. ................................................................................................................. 20

        First Cause of Action: False Advertising Law (FAL) .................................... 20

        Second Cause of Action: Unfair Competition Law (UCL) ............................ 21

VI.     Relief. .................................................................................................................. 23

VII.    Demand for Jury Trial. ....................................................................................... 23

**I.      Introduction.**

1.       In recent years, companies that sell goods or services online have sought to boost sales by enrolling their customers in automatically renewing subscriptions.  Some companies fail to make clear to consumers that they are being signed up for automatic charges.

2.       To protect Californians from these practices, California passed the Automatic Renewal Law (the ARL).  The ARL requires companies who sign consumers up for automatically renewing purchases to provide "clear and conspicuous" disclosures about the autorenewal plan and obtain "affirmative consent" to enroll consumers.

3.       Whoop sells wearable fitness tracking bands and associated fitness tracking. Whoop's wearable fitness bands have sensors that track fitness data such as heart rate, workout data, and sleep. The data collected by the tracking bands is uploaded to and processed by Whoop's backend servers and shown to users on a Whoop mobile phone app and website, which allows users to see weekly and monthly performance reports, and access coaching features.[1]

4.       Whoop's fitness bands and fitness tracking are sold bundled.  Said differently, Whoop customers cannot just buy a standalone fitness band; they must buy a package consisting of the fitness band and a pre-defined period of data processing and analytics (together, the "Whoop Membership").  Two different Whoop Memberships are available: a "24-Month Membership" (consisting of a fitness tracking band and 24-months of data processing and analysis); an "Annual Membership" (consisting of a fitness tracking band and 12 months of data processing and analysis). The annual membership can be billed annually or monthly. Whoop also offers a "1 Month Free Trial."

5.       At the end of the membership period or trial period, Whoop automatically renews customers for an additional year of membership at the annual membership price.[2]  But Whoop does not provide clear and conspicuous disclosures or obtain affirmative consent before enrolling consumers in any of these autorenewal plans.  So, Whoop is violating California's ARL.

---

[1] If subscription fees are not paid, the account becomes inactive, and the user is unable to upload new data from the Whoop device, rendering the device unusable.
https://www.whoop.com/us/en/terms-of-use/

[2] https://join.whoop.com/select/membership

**II.     Parties.**

6.      Plaintiff Donrick Sanderson resides in Walnut Creek, California.

7.      The proposed class includes citizens of California.

8.      Defendant Whoop, Inc. ("Whoop") is a Delaware corporation with its principal place of business at 1325 Boylston St., Suite 401, Boston, MA 02215.

**III.    Jurisdiction and Venue.**

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

10.     The Court has personal jurisdiction over Defendant because it does business in California. It advertises and sells its Whoop Memberships in California, and serves a market for its products and Memberships in California. Due to Defendant's actions, its products and Memberships have been marketed and sold to consumers in California, and harmed consumers in California. Plaintiff's claims arise out of Defendant's contacts with this forum. Due to Defendant's actions, Plaintiff purchased Defendant's Whoop Membership in California, and was auto-renewed in California.  Plaintiff was harmed in California.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling a Whoop Membership to Plaintiff.

**IV.    Facts.**

     **A.      California's Automatic Renewal Law.**

12.     The Automatic Renewal Law ("ARL") is part of California's False Advertising Law. The purpose of the ARL is to "end the practice of ongoing" subscription charges "without the consumers' explicit consent."  Cal. Bus. & Prof. Code §17600.  To this end, the law makes it illegal for companies to charge consumers for automatically renewing subscriptions, unless the company meets strict disclosure and consent requirements.

13.     Under the ARL, a company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer."  Cal. Bus. & Prof. Code §17602(a)(1).[3]

14.     Also, if "the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial." Cal. Bus. & Prof. Code § 17602(a)(1).

15.     The "automatic renewal offer terms" that must be presented include:

1)   That the subscription or purchasing agreement will continue until the consumer cancels.

2)   The description of the cancellation policy that applies to the offer.

3)   The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

4)   The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

5)   The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code §17601(b)(1)-(5).

16.     A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code §17601(c).

---

[3] A new version of the ARL became effective July 1, 2022.  This complaint cites to the previous version of the law (effective before July 1, 2022).  The changes are immaterial to the claims alleged here.

17.     After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms."  Cal. Bus. & Prof. Code §17602(a)(2).

18.     The ARL also has post-purchase acknowledgment requirements (required in addition to the pre-purchase requirements described above). Cal. Bus. & Prof. Code §17602(a)(3) & (b).

**B.     Whoop violates the Automatic Renewal Law.**

19.     As explained above, Whoop sells Whoop Memberships, which are popular fitness wearable trackers and associated fitness tracking.

20.     Whoop sells its Whoop Memberships through its website, join.whoop.com, and through its app, and has throughout the statute of limitations period.  In all relevant respects, throughout the entire statute of limitations period, across all versions of its website and app, the enrollment process is substantially similar.  And, it violates California's Automatic Renewal Law in substantially the same way, by failing to provide conspicuous disclosure of the automatic renewal terms and by failing to obtain affirmative consent.

21.     Generally speaking, across all versions of the website and app, users are given the option to sign up for a "24 Month Membership" or an "Annual Membership."  Both memberships include a fitness tracker, as well as data processing and analytics, and other related services for the relevant period of time (24 months or one year).  The 24 Month Membership is billed through a single upfront payment.  The Annual Membership can be billed through a single upfront payment or monthly (the upfront payment costs less). Whoop also offers a one-month free trial, which includes a pre-owned fitness tracker.[4]

22.     At the end of the term (24 months or one year or, in the case of the free trial, one month), Whoop automatically enrolls customers in a new one-year membership.  But at enrollment, Whoop does not provide clear and conspicuous disclosures that its plans auto-renew, or obtain affirmative consent.  So, when it enrolls consumers like Plaintiff in its automatically renewing subscription plans, Whoop violates California's Automatic Renewal Law.

23.     Example enrollment flows are depicted and described in greater detail below.

---

[4] This option appears to have been introduced around May 2023.

<u>Website</u>

24.    The enrollment process through Whoop's website is described below. The process is described with reference to a recent version of the mobile website, but the process is substantially similar for all versions of both the mobile and desktop website throughout the relevant timeframe.

25.    To join Whoop via the website, consumers are first instructed to choose a free Whoop device.



26.    Consumers are then given the option of choosing a 24-month Membership or an Annual Membership (and, if they choose an annual membership, the option to pay upfront or monthly).  Alternatively, consumers are given the option to choose a 1-month free trial which includes a pre-owned device:



27.     To reasonable consumers, the options appear to be definite term memberships that last the specified term.  In other words, a reasonable consumer looking at the options presented would understand that they are signing up to receive a Whoop device and membership lasting the specified period.  They would understand that, if they select the "24 Month Membership," they will purchase a Membership consisting of a tracking device plus data processing and analytics for a set period of 24 months, billed upfront. If they select the "Annual Membership," they will purchase a Membership consisting of a tracking device plus data processing and analytics for a set period of 1 year, billed either upfront or monthly (depending on their selection).  And if they select the "1 Month Free Trial," they will receive a free Membership consisting of a pre-owned device plus data processing and analytics for a set period of one month.  (Whoop incentivizes consumers to pay more up front and make longer commitments by lowering the monthly price for longer plans with up-front pay.)

28.     In truth, no matter what the user selects, at the end of the specified term, Whoop will enroll the user in a new, subsequent Annual Membership (billed either upfront or monthly) consisting of a Whoop device plus data processing and analytics for an additional year. And, Whoop will bill the user for that Annual Membership at the prevailing rates for its Memberships at the time of the renewal.[5]

29.     But none of the disclosures regarding this auto-renewal and automatic billing that California's ARL requires are conspicuously disclosed to the consumer before they choose their membership plan.

30.     The only mention of any of this is displayed below.  It is shown on the screen only if a consumer happens to scroll down further, past the membership options:



---

[5] Once the free trial ends, Whoop automatically enrolls consumers in its 12-month plan.

31.     The disclosures are not made in a clear and conspicuous manner.  A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code §17601(c).

32.     Here, the disclosures are in a smaller type than the surrounding text, and are in low contrast.  The text is in very small, gray text, against a gray background, making it hard to read.  The text is not set off from the surrounding text in a manner that clearly calls attention to it.  Instead, the hidden location, small font size, and low contrast color are designed to go unnoticed.  This is in contrast to, for example, the large, bold, black font against white background that is used to highlight the $0 free trial and the $239 Annual Membership.

33.     The disclosure also fails to provide a description of the cancellation policy that applies to the offer.  Nor does it obtain affirmative consent for these automatic charges.  It does not, for example, require the user to affirmatively check a checkbox agreeing to the terms.  Nor does it even require the user to press a button suggesting that the user is agreeing to something (for example, "I agree to autorenewal terms, continue").  Instead, as soon as the user selects one of the membership options, it proceeds to the next screen.

34.     Plus, because the disclosures are hidden "below the scroll," at the bottom of the page, and invisible unless the consumer scrolls down past any of the options the consumer might actually want to select, consumers choose their memberships without viewing the disclosures.  In addition, because the website does not require the consumer to scroll, or suggest that important disclosures and terms are hidden at the bottom, consumers have no reason to scroll down.  Thus, consumers sign up for a Whoop Membership without ever seeing the disclosures and linked terms.[6]

---

[6] In some versions of the desktop website, the tiny disclosures are above (rather than below) the "continue" button. (In other versions, it is below.)  This difference is immaterial because, regardless of the placement, the disclosures are deficient for all the reasons just described.

35.     After the consumer selects their preferred membership, a "Your Cart" page is displayed.  A "Your Cart" page for a consumer who selected a Whoop 4.0 device and an Annual Whoop Membership is displayed below:



36.     On the next page, the consumer is asked to create a Whoop account by entering their email address and a password; enter shipping details; choose a shipping method; and enter payment information:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16




17    37.    At no point in any of these pages does Whoop clearly and conspicuously disclose that

18 the subscription or purchasing agreement will continue until the consumer cancels.  Whoop fails to

19 clearly and conspicuously disclose the description of the cancellation policy that applies to the offer

20 and the length of the automatic renewal terms.  Whoop also fails to include a clear and conspicuous

21 explanation of the price that will be charged after the trial ends or the manner in which the

22 subscription or purchasing agreement pricing will change upon conclusion of the trial.  In addition,

23 Whoop fails to obtain the consumers' affirmative consent to the agreement containing the automatic

24 renewal offer terms or continuous service offer terms.

25    38.    After entering all the requested information, the consumer can then choose "Place

26 Order" or "Pay."  Once a consumer does so, the transaction is processed and the consumer is enrolled

27 in Whoop's automatically renewing Whoop Membership.

28

39.    As the above signup flow demonstrates, a consumer can enroll in Whoop's automatically renewing Whoop Membership without ever seeing any disclosures about automatic renewal.  None of the required disclosures regarding auto-renewal are visible to the consumer before they place their order or pay. Instead, the disclosures are located past the bottom of the screen, hidden from view.  They require a consumer to scroll down the page to view them.

40.    Only if a consumer happened to scroll down further, past the membership options, would they see this:



41.    The disclosures are in tiny, light grey text.  This makes the text hard to read.  The hidden location, small font size, and low contrast color are designed to go unnoticed, and consumers purchase the Memberships without ever seeing the disclosure.

42.    Because the disclosures are hidden at the bottom of the page (invisible unless the consumer decides to scroll down), consumers choose their memberships and pay for the memberships without ever viewing the disclosures.  There is no requirement that the consumer scroll down the page to see this disclosure.  In addition, because the website does not require the consumer

1  to scroll, or suggest that important disclosures and terms are hidden at the bottom, consumers have no

2  reason to scroll down.  Thus, consumers sign up for a Whoop Membership without ever seeing the

3  disclosures and linked terms.

4        Mobile App

5        43.     The enrollment process through Whoop's mobile app is described below. The process

6  is described with reference to a recent version of the mobile app, but the process is substantially

7  similar for all versions of both the mobile and desktop website throughout the relevant timeframe.

8        44.     To join Whoop via the app, consumers are first instructed to try a 1-month free trial,

9  the 24-month Membership, or Annual Membership (and if they choose the Annual membership, they

10  can choose to pay upfront or monthly.




24        45.     To reasonable consumers, the options appear to be definite term memberships that last

25  the specified term.  In other words, a reasonable consumer looking at the options presented would

26  understand that they are signing up to receive a Whoop device and membership lasting the specified

27  period.  They would understand that, if they select the "24 Month Membership," they will purchase a

28  Membership consisting of a tracking device plus data processing and analytics for a set period of 24

months, billed upfront. If they select the "Annual Membership," they will purchase a Membership consisting of a tracking device plus data processing and analytics for a set period of 1 year, billed either upfront or monthly (depending on their selection).  And if they select the "1 Month Free Trial," they will receive a free Membership consisting of a pre-owned device plus data processing and analytics for a set period of one month.  (Whoop incentivizes consumers to pay more up front and make longer commitments by lowering the monthly price for longer plans with up-front pay.)

46.     In truth, no matter what the user selects, at the end of the specified term, Whoop will enroll the user in a new, subsequent Annual Membership consisting of a Whoop device plus data processing and analytics for an additional year.  And, Whoop will bill the user for that Annual Membership at the prevailing rates for its Memberships at the time of the renewal.

47.     But none of the disclosures regarding this auto-renewal and automatic billing that California's ARL requires are conspicuously disclosed to the consumer before they choose their membership plan.

48.     The consumer is then instructed to then create a Whoop account, enter a shipping address, and choose a shipping method (for shipment of the free Whoop device):



49.     The consumer then enters the payment method.  After entering the payment method, the consumer can press the "Complete Purchase" or "Pay" button to complete the transaction:



50.     Again, none of the required disclosures regarding auto-renewal are visible to the consumer before they place their order or pay. Instead, the disclosures are located past the bottom of the screen, hidden from view.  They require a consumer to scroll down the page to view them.

51.     Only if a consumer happened to scroll down further, past the membership options, would they see this:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17    52.    As in the website version, in the app version, the disclosures are hidden at the bottom

18 of the page (invisible unless the consumer decides to scroll down).  Also, because the website does

19 not require the consumer to scroll, or suggest that important disclosures and terms are hidden at the

20 bottom, consumers have no reason to scroll down.  Thus, consumers sign up for a Whoop

21 Membership without ever seeing the disclosures and linked terms.

22    53.    The disclosures are not made in a clear and conspicuous manner.  A "clear and

23 conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font,

24 or color to the surrounding text of the same size, or set off from the surrounding text of the same size

25 by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. &

26 Prof. Code §17601(c).

27    54.    Here, the disclosures are in a smaller type than the surrounding text, and are in low

28 contrast.  The text is in very small, low-contrast light gray text, making it hard to read.  The text is

not set off from the surrounding text in a manner that clearly calls attention to it. The text is smaller and lower contrast than the text around it. The hidden location, small font size, and low contrast color are designed to go unnoticed.

55.     The disclosure also fails to provide a description of the cancellation policy that applies to the offer. Nor does it obtain affirmative consent for these automatic charges. It does not, for example, require the user to affirmatively check a checkbox agreeing to the terms. Nor does it even require the user to press a button suggesting that the user is agreeing to something (for example, "I agree to autorenewal terms, continue"). Instead, as soon as the user selects one of the membership options, it proceeds to the next screen.

56.     Plus, because the disclosures are hidden "below the scroll," at the bottom of the page, and invisible unless the consumer scrolls down past any of the options the consumer might actually want to select, consumers choose their memberships and pay without viewing the disclosures. In addition, because the website does not require the consumer to scroll, or suggest that important disclosures and terms are hidden at the bottom, consumers have no reason to scroll down. Thus, consumers sign up for a Whoop Membership without ever seeing the disclosures and linked terms.

* * *

57.     In sum, both for enrollments through its website and enrollments through its app, Whoop violates the Automatic Renewal Law. Both the website and app violate the law in substantially the same way. They both fail to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer.

58.     Whoop also violates the ARL, via both website and app, by charging Plaintiff and class members for automatic renewals or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms.

59.     Whoop also violates the ARL, via both website and app, by failing to include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchase agreement pricing will change upon conclusion of the trial.

60.     For purposes of the claims asserted in this action, Whoop has violated the ARL in the ways described above during the entire applicable statute of limitations periods, via both website and app, in substantially the same way.

**C.     Whoop misled and injured Mr. Sanderson.**

61.     Mr. Sanderson signed up for a Whoop Annual Membership, through the Whoop mobile phone website, on or around June 2021.  When he signed up, he was not aware that, at the end of the annual membership period, Whoop would automatically charge him $288.00 and enroll him in an automatically renewing annual subscription.  He believed that after annual term of the Membership ended, he would have to opt-in if he wanted to continue the service.  In other words, he believed that he was signing up for a one-time charge for a fixed-term, one-year subscription, not an automatically renewing Membership that renewed each year.

62.     And, Whoop did not clearly and conspicuously disclose to Mr. Sanderson that he was being enrolled in an automatically renewing subscription. Whoop did not clearly and conspicuously disclose to Mr. Sanderson that the subscription or purchasing agreement will continue until he canceled.  Whoop failed to clearly and conspicuously disclose the description of the cancellation policy that applies to the offer and the length of the automatic renewal terms.  Whoop did not include a clear and conspicuous explanation of the price that would be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.  In addition, Whoop failed to obtain the Mr. Sanderson's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

63.     Without his knowledge or consent, Whoop enrolled Mr. Sanderson in an automatically renewing subscription that renewed annually until he took affirmative steps to cancel it.  In addition, without his knowledge and consent, Whoop automatically renewed Mr. Sanderson's for two additional annual Whoop Memberships.  And without his knowledge or consent, Whoop charged Mr. Sanderson for those renewed annual Whoop Memberships two years in a row: $288.00 for an annual subscription in June 2022 and $239.00 for an annual subscription in June 2023.[7]  Mr.

---

[7] Whoop decreased the price of the Annual Whoop Membership sometime between June 2022 and June 2023.

Sanderson did not notice that he had been auto-renewed until he had already been auto-renewed twice.

64.     Because Mr. Sanderson did not know he had been enrolled in an automatically renewing subscription, he did not keep track of how much time had passed since he had originally purchased his Whoop.  And, because the subscription fee was automatically billed to his credit card, he did not notice that he had been auto-renewed.  Because the subscription fee for automatic renewals is automatically billed to the credit card consumers used to make their initial purchase, and the renewal charge only appears once every year or two for consumers who chose to pay upfront, it is easy for consumers like Mr. Sanderson to miss.

65.     If Mr. Sanderson had known the truth, he would not have signed up for an Annual Membership in the first place, and would not have paid Whoop the initial Annual Membership fee. He also would not have paid Whoop for the annual renewals he was charged for.

66.     On or about June 2023, Mr. Sanderson received a phone notification from his bank and noticed that he had been charged for Whoop in June 2023.  He then looked into his bank statements and learned that he had been charged in June 2022 as well.

67.     By the time Mr. Sanderson noticed the June 2023 charge, he had not used his Whoop in many months.  Mr. Sanderson stopped using Whoop in fall of 2022, because his Whoop device stopped working.   Had he known he that he had been enrolled in an automatically renewing subscription and that he would be auto-renewed and charged for an additional annual subscription in June 2023, he would have canceled, because he did not have a working Whoop device. (A Whoop device is required to collect a user's fitness and wellness data, and the subscription is used to view and analyze the data.  Thus, without a Whoop device, the Whoop subscription is useless.)

68.     After realizing that he had been auto-renewed, Mr. Sanderson reached out to Whoop and explained that he no longer used the device, and asked for a refund of the annual charge. Whoop, however, refused to refund him the annual fee.  So, Mr. Sanderson resigned himself to the $288.00 and $239.00 charges, until the end of his 2023 subscription period.  This is not something he would have agreed to, had it been clearly disclosed up front.  Mr. Sanderson did not have a working Whoop device for any of the period June 2023-present, and he still does not have a functioning

Whoop device.  So, he could not possibly have gotten any benefit from the subscription; the subscription is worthless to him.

69.     Very recently, Mr. Sanderson located a confirmation email from Whoop in May 2023, stating that his card would be charged for the renewal.  The email, however, does not disclose the renewal or its terms clearly or conspicuously.  And Mr. Sanderson receives many emails (including many junk emails and a variety of marketing emails from Whoop), and he did not notice this email when it was received.  (If he had, he would have canceled his Membership, considering he was no longer using the Membership at the time).  And the ARL exists precisely because post-purchase emails are not sufficient; to ensure that California consumers know that they are being enrolled in an automatically renewing subscription, the law requires pre-purchase disclosures and upfront affirmative consent.  Mr. Sanderson and other consumers are not being afforded this legally-required opportunity.

70.     Mr. Sanderson faces an imminent threat of future harm.  He likes the Whoop service and would buy a (limited term, non-renewing) subscription again if he had a functioning Whoop device and could feel sure that Whoop would not illegally auto-renew him.  But without an injunction, he cannot trust that Whoop will comply with the ARL.

**V.     Class Action Allegations.**

71.     Mr. Sanderson brings his claims for the following Class: all persons who purchased a Whoop subscription in California, during the applicable statute of limitations period.

72.     The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6)  the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity & Ascertainability*

73.     The proposed class contains members so numerous that it is impractical to bring every individual claim.  There are tens or hundreds of thousands of class members.

74.     Class members can be identified through Defendant's sales records and public notice.

*Predominance of Common Questions*

75.     Common questions of law and fact predominate over individual issues.  Common questions of law and fact include, without limitation: (1) whether Whoop's automatic renewal plans violate the ARL and California consumer protection laws and; (2) restitution needed to compensate Plaintiff and the class, and (3) class-wide injunctive relief necessary to prevent harm to Plaintiff and the class.

*Typicality and Adequacy*

76.     Plaintiff's claims are typical of the class.  Like the class, Plaintiff was charged for a Whoop Membership.  There are no conflicts of interest between Plaintiff and the class.

*Superiority*

77.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**<u>First Cause of Action: False Advertising Law (FAL)</u>**

78.     Plaintiff incorporates the facts alleged above.

79.     Plaintiff brings this claim individually and for the class.

80.     The FAL authorizes a private right of action for any violation of Chapter 1, including the ARL. See Cal. Bus. & Prof. Code § 17535 (actions can be brought by "any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter"); § 17602 (ARL); *see Arnold v. Hearst Magazine Media, Inc.*, at *17-18 (S.D. Cal. Feb. 10, 2021) (explaining how the FAL authorizes a private right of action under the ARL).

81.     Defendant has violated Sections 17500 and 17602 of the Business and Professions Code.

82.     Defendant violated Section 17500 of the Business and Professions Code by disseminating misleading advertisements concerning the automatically renewing nature of Whoop Memberships. As described more fully above, Defendant's advertising of the Whoop Memberships (and its failure to display ARL compliant disclosures with those advertisements) misleads reasonable consumers about the automatically renewing nature of the plans.

83.     The same behavior violates Section 17602 of the Business and Professions Code (the ARL). As alleged in detail above, Defendant violated the ARL by failing to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer.

84.     Defendant also violated the ARL by charging Plaintiff and class members for automatic renewals or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms.

85.     Defendant knew or reasonably should have known that its violations are misleading to reasonable consumers.

86.     Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision. If he had known about the automatic renewal scheme, he would not have purchased his initial 12-month membership.

87.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Whoop Memberships.

88.     Defendant's violations were a substantial factor and proximate cause of economic harm to Plaintiff and class members. Defendant's violations were a substantial factor and proximate cause of economic harm to Plaintiff and class members.

**Second Cause of Action: Unfair Competition Law (UCL)**

89.     Plaintiff incorporates the facts alleged above.

90.     Plaintiff brings this claim individually and for the class.

*Unlawful*

91.     Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.  Defendant committed unlawful practices because, as alleged above and incorporated here, it violated California's Automatic Renewal Law.

*Unfair*

92.     As alleged in detail above, Defendant committed "unfair" acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL.

93.     The harm to Plaintiff and the class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to illegal automatic renewal practices.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Illegal auto-renewal practices only injure healthy competition and harm consumers.

94.     Plaintiff and the class could not have reasonably avoided this injury. Defendant's representations and omissions were deceiving to reasonable consumers like Plaintiff. There were reasonably available alternatives to further Defendant's legitimate business interests, such as complying with the ARL.

95.     Defendant violated established public policy by violating the ARL.  The unfairness of this practice is tethered to a legislatively declared policy (that of the FAL and ARL).

96.     Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

*Deceptive*

97.     As alleged in detail above, Defendant committed "deceptive" acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL.

98.     Defendant's representations and deficient ARL disclosures were misleading to Plaintiff and other reasonable consumers.

99.     Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

*   *   *

100.    Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiff and class members.

## VI.    Relief.

101.    Plaintiff seeks the following relief for himself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the class;
- All available monetary forms of recovery, including restitution, and other just equitable relief;
- An injunction;
- Pre- and post-judgement interest
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VII.    Demand for Jury Trial.

102.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: October 24, 2023                              Respectfully submitted,

                                                    By: /s/ *Christin Cho*
                                                    Christin Cho (Cal. Bar No. 238173)
                                                    christin@dovel.com
                                                    DOVEL & LUNER, LLP
                                                    201 Santa Monica Blvd., Suite 600
                                                    Santa Monica, California 90401
                                                    Telephone: (310) 656-7066
                                                    Facsimile: (310) 656-7069

                                                    *Attorney for Plaintiff*