1   MORGAN, LEWIS & BOCKIUS LLP
    Joseph Duffy, Bar No. 241854
2   Megan A. Suehiro, Bar No. 316104
    Brittany M. Johnson, Bar No. 328436
3   300 South Grand Avenue, 22nd Floor
    Los Angeles, CA  90071-3132
4   T: +1.213.612.2500 / F: +1.213.612.2501
    joseph.duffy@morganlewis.com
5   megan.suehiro@morganlewis.com
    brittany.johnson@morganlewis.com
6
    Attorneys for Defendant,
7   Whoop, Inc.

8

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12  DONRICK SANDERSON, individually and on      Case No. 3:23-cv-05477-CRB
    behalf of all others similarly situated,
13                                              **DEFENDANT WHOOP, INC.'S**
                          Plaintiff,            **OPPOSITION TO PLAINTIFF'S**
14                                              **MOTION FOR CLASS**
                    v.                          **CERTIFICATION**
15
    WHOOP, INC.,                                Hearing Date: February 14, 2025
16                                              Hearing Time: 10:00 a.m.
                          Defendant.            Judge: Hon. Charles R. Breyer
17
                                                Compl. Filed: October 24, 2023
18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    OPPOSITION TO PLAINTIFF'S MOTION
                                              FOR CLASS CERTIFICATION
                                          CASE NO. 3:23-CV-05477-CRB

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................................... 2

    A. Whoop's Subscription-Based Membership Model. ........................................ 2

    B. Whoop's Renewal and Cancellation Disclosures. ......................................... 2

    C. Plaintiff's Experience with Whoop. .............................................................. 4

III. SUMMARY OF ARGUMENT ................................................................................. 6

    A. A Class Trial Will Not Generate Common Answers to Key Questions; Individualized Issues Predominate. ............................................................... 6

        1. Plaintiff Cannot Prove Classwide Violation of the ARL. ................... 6

            a. Whether or Not a Putative Class Member Viewed Disclosures on Whoop.com is Highly Individualized. .................. 6

            b. Members' Consent to Automatic Renewal is Highly Individualized. ...................................................................... 7

        2. Individual Inquiries Predominate the Question of Whether Customers Were Damaged. ................................................................ 7

        3. Plaintiff's Damages Model is Flawed. ................................................ 8

    B. Plaintiff's Claims are Not Typical of the Putative Class or Subclass. ........... 9

        1. Plaintiff has a limited understanding of his own purchase experience. ......................................................................................... 9

        2. Plaintiff's expectations and interests differ from those of the class.......... 10

    C. Plaintiff is Not an Adequate Class Representative. ...................................... 10

IV. LEGAL STANDARD .............................................................................................. 11

V. ARGUMENT .......................................................................................................... 11

    A. A Class Trial Will Not Generate Common Answers to Key Questions; Individualized Issues Predominate. ............................................................. 11

        1. Plaintiff Cannot Prove Classwide Violation of the ARL. ................. 11

            a. Whether or Not a Putative Class Member Viewed Disclosures on Whoop.com is Highly Individualized. ................ 12

            b. Members' Consent to Automatic Renewal is Highly Individualized. .................................................................... 13

        2. Individual Inquiries Predominate the Question of Whether Customers Were Damaged. .............................................................. 14

        3. Plaintiff's Damages Model is Flawed. .............................................. 15

    B. Plaintiff's Claims are Not Typical of the Putative Class or Subclass. ......... 18

        1. Plaintiff has a limited understanding of his own purchase experience. ....................................................................................... 18

**TABLE OF CONTENTS**
(continued)

**Page**

2.    Plaintiff's expectations and interests differ from those of the class.......... 19

C.    Plaintiff is Not an Adequate Class Representative. ............................................. 19

VI.    CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.,*
    247 F.R.D. 156 (C.D. Cal. Dec. 21, 2007) ............................................................. 18

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
    141 F.R.D. 144 (N.D. Cal. 1991) ............................................................. 11, 19

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ............................................................. 11

*Corley v. Google, Inc.,*
    316 F.R.D. 277 (N.D. Cal. 2016) ............................................................. 13

*Daro v. Superior Court,*
    151 Cal.App.4th 1079 (2007) ............................................................. 15

*Day v. AT & T Corp.,*
    63 Cal.App.4th 325 (1998) ............................................................. 9, 17

*Feske v. MHC Thousand Trails Ltd. P'ship,*
    2013 WL 1120816 (N.D. Cal. Mar. 18, 2013) ............................................................. 10, 20

*Gardner v. Health Net, Inc.,*
    2010 WL 11579028 (C.D. Cal. Sept. 13, 2010) ............................................................. 9, 18

*In re Google Inc. Gmail Litig.,*
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................................. 13

*Kihn v. Bill Graham Archives LLC,*
    2022 WL 18935 (9th Cir. Jan. 3, 2022) ............................................................. 7, 13

*Koenig v. Benson,*
    117 F.R.D. 330 (E.D.N.Y.1987) ............................................................. 19

*Leanne Tan v. Quick Box, LLC,*
    2024 U.S. Dist LEXIS 6935 (S.D. Cal. Jan .12, 2024) ............................................................. 12

*Leuthold v. Destination Am., Inc.,*
    224 F.R.D. 462 (N.D. Cal. 2004) ............................................................. 11

*Lewallen v. Medtronic USA, Inc.,*
    2002 WL 31300899 (N.D. Cal. Aug. 28, 2002) ............................................................. 14

*Linda Hall v. Time, Inc.,*
    2019 WL 8107879 (C.D. Cal. Sept. 24, 2019) ............................................................. 7, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

*May v. Gladstone,*
   562 F.Supp.3d 709 (C.D. Cal. 2021) ................................................................. 20

*Mobile Emergency Housing Corp.,*
   2023 WL 9550942, at *12 ............................................................................... 12

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,*
   31 F. 4th 651 (9th Cir. 2023) ....................................................................... 8, 14

*In re POM Wonderful LLC,*
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ............................................... 9, 16

*Shields v. Smith,*
   1991 WL 319032 (N.D. Cal. Nov. 4, 1991) ..................................................... 10

*Stiner v. Brookdale Senior Living, Inc.,*
   665 F. Supp. 3d 1150 (N.D. Cal. 2023), *opinion clarified,* 2024 WL 3498492
   (N.D. Cal. July 22, 2024) ............................................................................ 8, 14

*In re Tobacco Cases II,*
   240 Cal.App.4th 779 (2015) ....................................................................... 9, 16

*Turnier v. Bed Bath & Beyond Inc.,*
   517 F. Supp. 3d 1132 (S.D. Cal. 2021) ................................................. 7, 12, 19

**Statutes**

Cal. Bus. & Prof. Code § 17601 ..................................................................... 6, 11

Cal. Bus. & Prof. Code § 17601(c) ............................................................. 6, 7, 12

Cal. Bus. & Prof. Code § 17602 ..................................................................... 6, 11

California's Automatic Renewal Law ............................................................. *passim*

**Other Authorities**

Rule 23 ...................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ............................................................................. 9, 18, 20

Rule 23(b)(3) ................................................................................................. 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

I.     **INTRODUCTION**

Whoop, Inc. ("Whoop") sells subscription-based memberships consisting of a combination of software analytics and hardware in the form of a wearable health and fitness tracker.  As communicated to customers multiple times throughout the membership enrollment process, a customer's membership with Whoop automatically renews as an annual membership at the conclusion of the initial term.  Whoop disclosed its automatic renewal policies—and its policies regarding a customer's ability to cancel a membership—in several locations on the Whoop website, as well as in order confirmation and renewal email communications.

Nonetheless, Plaintiff seeks to certify a class based on a claim that Whoop violated California's Automatic Renewal Law ("ARL") by automatically renewing putative class members in Whoop memberships without adequate disclosures or consent.  Plaintiff's Motion ("Mot.") at 8. Despite Plaintiff's efforts to portray an enrollment process through which putative class members uniformly enrolled in an automatically renewing Whoop membership without seeing disclosures by Whoop, whether or not putative class members in fact missed the disclosures is impacted by a number of individualized factors that preclude certification, including, for example, the type of device used to complete the checkout process, the settings of that device, when the purchase was made, and each putative class member's knowledge and intent in purchasing a Whoop membership.

Plaintiff's own individual claims rest on uncertain grounds.  He testified that he does not remember what the Whoop checkout screen looked like at the time of his purchase nor what disclosures about autorenewal he saw at the time.  He conceded that the allegedly problematic disclosures included in the complaint are different than what he saw when he made his purchase. Plaintiff also testified that, at the time he purchased his Whoop membership, he was aware that he could cancel it and further acknowledged that Whoop's confirmation email from when he purchased his membership disclosed that the membership[1] annually renews and that a member may cancel at any time with instructions on how to do so.  These are merely a few among several factors weighing against Plaintiff's claim of uniformity among putative class members.  For these reasons

---

[1] Plaintiff understands "billed annually" to mean billed on an annual basis, *i.e.*, once a year.

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1    and those discussed below, Plaintiff cannot satisfy the requirements of Rule 23.

2    **II.    FACTUAL BACKGROUND**

3        **A.    Whoop's Subscription-Based Membership Model.**

4        Whoop is a wearable health and fitness tracker that provides consumers with the ability to

5    monitor their overall health metrics.  Declaration of Megan Suehiro ("Suehiro Decl."), Ex. A

6    (Nathan Giacalone Deposition Transcript ("N.G. Tr.") 11:10-13).  Whoop sells tracking bands and

7    access to associated software through subscription-based memberships.  *Id*. (N.G. Tr. 24:10-15).

8    Over time, Whoop has offered a variety of consumer memberships and other memberships for

9    enterprise clients.  *Id*. (N.G. Tr. 20:18-24; 21:8-13).  When a Whoop member purchases an annual

10   membership, they sign up for an initial 12-month Whoop membership which renews for another

11   12 months unless cancelled.  *Id*. (N.G. Tr. 22:6-8; 22:9-13).  By operating under a subscription-

12   based membership model, Whoop provides recurring value to its members in the form of continuing

13   health and performance information and membership in the Whoop community.  *Id*. (N.G. Tr. 11:9-

14   13, 208:6-17).  Whoop members can cancel their membership at any time.  Mot. Ex. 6.  Whoop

15   members can also "turn off" the automatic renewal feature of their subscription.  Suehiro Decl., Ex.

16   A (N.G. Tr. 25: 20-21; 37:4-5).

17       Whoop members access their health and fitness data by wearing their Whoop strap,

18   connecting their strap to a phone, uploading data to Whoop servers, and viewing the analytics that

19   Whoop provides on that data.  Suehiro Decl., Ex. A (N.G. Tr. 208:23-209:3).  In addition to

20   providing health and fitness data, a Whoop membership offers its members other benefits, such as

21   the ability to connect the heart rate feature to a Peloton or other third-party device, *id*. (N.G. Tr.

22   209:4-11); the ability to interact with members of the Whoop community, *id*. (N.G. Tr. 209:12-19,

23   210:1-5); and a record of historical data, *id*. (N.G. Tr. 211:16-18).

24       **B.    Whoop's Renewal and Cancellation Disclosures.**

25       As part of the website sign-up process after 2019, Whoop disclosed its automatic renewal

26   and cancellation policies multiple times and in multiple communications.  First, on the

27   "Membership Page," Whoop provided the following disclosure:

28

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1
2

> All memberships, including trial[2], automatically renew as a [$239/yr] annual membership. Monthly billing also available on 12-month memberships. Trials include pre-owned devices.

3

Suehiro Decl., Ex. B.

4
5

The "FAQs" under the disclosure on that page also included the question, "**HOW DOES THE TRIAL PLAN WORK?**," which when clicked provided the following disclosure:

6
7
8

> If WHOOP is not for you, just cancel and send your device and battery pack back for the cost of shipping [($8.99)]. Once your trial ends, you'll automatically join our 12-month plan for [$239,] or you can choose our 24-month plan or opt for monthly financing [($30/mo) for 12 months).

9

Suehiro Decl., Ex. B.

10
11
12
13
14

After the user selected their preferred membership, they were taken to a page to create a Whoop account and enter payment details ("Checkout Page"). *See* Mot. Ex. 6; *see also* Suehiro Decl., Ex. C. Prior to submitting an order, the following text appeared directly under the "Place Order" and "Apple Pay" buttons on the website, hyperlinking to the Terms of Use[3] and Privacy Policy in contrasting blue font:

15
16
17
18

> By placing an order, you agree to the WHOOP Terms of Use and Privacy Policy. You authorize WHOOP to charge your credit card annually each time your membership automatically renews. Your membership begins once you connect the WHOOP 4.0 or 1-month from the shipment date. You may cancel at any time.

Mot. Ex. 6; Suehiro Decl., Ex. C.[4]

19
20
21
22

Whoop disclosed these terms again via post-payment email acknowledgments. For example, shortly after an order was placed, customers received an email confirmation of their order that stated in relevant part: "Your membership will renew automatically at a rate of [***] / year +

23

[2] The trial membership was not available when Plaintiff made his membership purchase in 2021. Suehiro Decl., Ex. D (Transcript of Plaintiff's Deposition ("Pl. Tr.") 128:3-10).

24
25

[3] In addition to the automatic renewal disclosure displayed on Whoop's website, Whoop's Terms of Use also provided renewal and cancellation disclosures. *See* Suehiro Decl., Ex. E. It also provided a link at which the user could "change or terminate [their] Membership."

26
27
28

[4] This disclosure appears on both the website and mobile app when members join via join.whoop.com, but the desktop website version of the disclosure appears in slightly different format than appears on a mobile device browser. *See* Suehiro Decl., Ex. A (N.G. Tr. 46:10-12); *see also id.*, Ex. F.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

tax. Your membership begins once you connect the Strap or 1- month from the shipment date. You may cancel at any time at app.whoop.com." Then again, emails sent to customers in advance of each auto-renewal stated in relevant part:

> Heads up. Your membership is coming to an end and will automatically renew in [***] days. . . .
>
> Your renewal price for the next 12 months is USD $[***]+ tax.
>
> You may cancel at any time. To manage your membership, log in to your account.

Suehiro Decl., Ex. G.

The placement of the pre-purchase disclosures by Whoop about its renewal and cancellation policies has changed over time. Mot. Ex. 8; Suehiro Decl., Ex. A (N.G Tr. 82:8-19; 85:21-24; 97:11-1; 100:14-17; 100:23-25); Ex. H; Ex. I. Membership offerings also changed during this period. *Compare* Suehiro Decl., Ex. F ("Choose Membership" page offering only monthly membership options in June 2021) *with id.*, Ex. B (offering annual membership options in April 2023); *see also id.*, Ex. J (N.G. Tr. 274:2-4) (no annual plan before February 2021). The email confirmation templates that existed before—and after—June or May of 2021 also contained differences. *Id.*, Ex. A (N.G. Tr. 157:21-25; 158:6-14; 159:8-9).

### C.    Plaintiff's Experience with Whoop.

Plaintiff purchased an "Annual Membership" from Whoop in June 2021, allegedly via the Whoop website while using his phone (not the mobile app). Compl. ¶ 61; Suehiro Decl., Ex D (Pl. Tr. 117:15-18; 21-23). His membership renewed twice—in June 2022 and in June 2023—before he filed this lawsuit on October 24, 2023. Compl. ¶ 63. Plaintiff admits that he used Whoop services in the first annual membership period and in a subsequent renewal period. Suehiro Decl., Ex. D (Pl. Tr. 203:6-11); *id.*, Ex. K. And, he submitted an order to upgrade to a new device for free on or around September 8, 2021. Suehiro Decl., Ex. D (Pl. Tr. 154:10-21).[5] Plaintiff contacted

---

[5] Plaintiff testified that he did not recall having any reason to doubt that there was a disclosure alerting him that his next bill would be due on a certain date when he upgraded his Whoop device. *See* Suehiro Decl., Ex. D (Pl. Tr. 157:1-7).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

Whoop membership services to cancel his membership on July 21, 2023—two years after his purchase—acknowledging that his "biggest concern that caused [him] to cancel" was that his devices didn't charge anymore, Suehiro Decl., Ex. L, but he failed to follow through with the Whoop representative to cancel his membership at that time. *Id.*, Ex. D (Pl. Tr. 171:20-22; 173:16-180:25). Plaintiff testified that he has "no idea" whether his membership is still active. *Id.* (Pl. Tr. 112:19-113:12; 182:21-24; 182:25-184:10).

Plaintiff does not recall what the Whoop sign up webpage looked like when he made his purchase, *id.* (Pl. Tr. 91:17-22), nor does he deny that he saw the renewal disclosure language at the time of his purchase. *Id.* (Pl. Tr. 126:21-127:13). Plaintiff acknowledges that the screenshots included in the operative Complaint ***do not*** show the exact layout of the Whoop membership and checkout screens he saw when making his purchase in 2021. *Id.* (Pl. Tr. 128: 3-10, 21-24; 193:20-194:17); Compl. ¶ 44. Plaintiff does not recall receiving an order confirmation email from Whoop, Suehiro Decl., Ex. D (Pl. Tr. 142:6-9), nor does he recall receiving a 30-day automatic renewal notice email, but he testified that "it's possible" that he did receive such notice. *Id.* (Pl. Tr. 157:25-158:6). Plaintiff testified that it's "very possible" he received some communications from Whoop that he did not even open—and acknowledges the possibility that there was a post-purchase acknowledgement in those communications setting forth the automatic renewal terms cancellation policy and how to cancel. *Id.* (Pl. Tr. 195:12-15; 196:1-8). Plaintiff admitted that a Whoop email confirmation from April 2021 stated that "[his] membership will renew automatically at a rate of $288 **per year**, plus tax" and that "[he] may cancel at any time at app.WHOOP.com." *Id.* (Pl. Tr. 149:1-150:23).[6] And, Plaintiff acknowledged that he received notifications from his bank about credit card charges from Whoop for his renewal terms in June 2022 and June 2023. *Id.*, Ex. K (Nos. 36, 37); *id.*, Ex. D (Pl. Tr. 102:16-103:16).

---

[6] Plaintiff's testimony is inconsistent with his allegations in the operative Complaint that he did *not* know he was signing up for a subscription that would be billed annually. Compl. ¶ 63.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1    **III.    SUMMARY OF ARGUMENT**

2        Whoop disclosed its automatic renewal policies—and its policies regarding a customer's

3    ability to cancel a membership—in several locations on the Whoop website, as well as in order

4    confirmation and renewal email communications.  Plaintiff has no common evidence regarding

5    whether and how putative class members viewed these disclosures, precluding a finding of

6    commonality and predominance.  In fact, Plaintiff's understanding during his own enrollment

7    process only confirms that he cannot make this showing on his own behalf—much less on behalf

8    of the class.  Plaintiff also cannot demonstrate typicality of his claims or that he would be an

9    adequate class representative, given that he is admittedly unable to speak to his own experience in

10   signing up for a Whoop membership.

11       **A.    A Class Trial Will Not Generate Common Answers to Key Questions;**
     **Individualized Issues Predominate.**

12

13           **1.    Plaintiff Cannot Prove Classwide Violation of the ARL**.

14       Plaintiff cannot prove with classwide evidence a violation of the ARL.  Mot. at 8.  The

15   adequacy of the Whoop disclosures turns on, among other things: (1) whether the pre-purchase

16   disclosures on the Whoop website were "clear and conspicuous . . . and in visual proximity" to the

17   request for consent to the offer; and (2) whether Whoop obtained affirmative consent.  Mot. at 9;

18   Cal. Bus. & Prof. Code §§ 17601, 17602.  Those questions cannot be answered with common

19   evidence because what any putative class member may have seen may differ from the next.  Putative

20   class members made purchases at different times, with different devices and user settings, among

21   other different circumstances.  As a result, it cannot be presumed that all customers uniformly chose

22   to purchase a Whoop membership based on the same experience.

23           **a.    Whether or Not a Putative Class Member Viewed Disclosures**
     **on Whoop.com is Highly Individualized**

24

25       Whether text is "clear and conspicuous" depends on whether attention is called to the

26   subject language, as well as the size of the text compared to surrounding text; contrasting font, type,

27   and color; and whether and how the subject text is set apart from other text.  Cal. Bus. & Prof. Code

28   § 17601(c).  These factors are highly variable and can be impacted by a number of individualized

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

factors, such as user device settings and preferences; location of subject text; and location of other text. *See id.*; *see also Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1139-40 (S.D. Cal. 2021) (emphasizing as one such factor "visual proximity" between disclosure and request for consent); *Linda Hall v. Time, Inc.*, 2019 WL 8107879, at *3 (C.D. Cal. Sept. 24, 2019) (repeated nature of disclosures and their placement were factors that rendered them "clear and conspicuous"). All of those factors create individualized issues here: *First*, Plaintiff has no common evidence that all class members made purchases using the same device(s), using the same vertical or horizontal orientation of those device(s), set with the same preferences in terms of font size, browser format, zoom percentages, and similar. All of these factors could impact how and where disclosures by Whoop appeared to that individual customer during their enrollment process. *See, e.g.*, *Hall*, 2019 WL 8107879, at *3 (appearance of disclosure, including size of image between notice and request for consent, impacts whether a plaintiff was adequately informed of automatic renewal notice); *Turnier*, 517 F. Supp. 3d at 1139-40 (considering whether hyperlink "a few centimeters" from the request for consent was clear and conspicuous). *Second*, the Whoop website varied over time. *See* Pl. Exs. 7, 8; *see also* Suehiro Decl., Ex. A (N.G. Tr. 44:15-17) (acknowledging that Whoop is always "iterating" on its website). Plaintiff himself confirmed that the screenshot included in the Complaint did not show the exact layout of the screen that he saw at the time of his purchase. *Id.*, Ex. D (Pl. Tr. 128:3-10).

### b. Members' Consent to Automatic Renewal is Highly Individualized.

Likewise, whether the putative class members provided consent presents an individualized inquiry incapable of classwide resolution. *Kihn v. Bill Graham Archives LLC*, 2022 WL 18935, at *2 n.3 (9th Cir. Jan. 3, 2022) (recognizing that "the predominance problem presented by individualized questions of consent defeats class certification").

### 2. Individual Inquiries Predominate the Question of *Whether* Customers Were Damaged.

The question of *"whether* class members actually suffered an injury sufficient to confer Article III standing" is a question that should be considered at the class certification stage and is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

one that precludes certification here. *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1206 (N.D. Cal. 2023), *opinion clarified*, 2024 WL 3498492 (N.D. Cal. July 22, 2024). Rule 23 "requires a district court to determine whether individualized questions [regarding standing] would predominate over common questions." *Stiner*, 665 F. Supp. 3d at 1206 (citing *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 668 n.12 (9th Cir. 2023)).

The question of whether putative class members were actually injured cannot be answered without addressing individualized questions about customer expectations and device usage. *Stiner*, 665 F. Supp. 3d at 1206. Here, whether a member was harmed depends on whether they knew that their membership would be automatically renewed and whether they intended their membership to continue. Plaintiff concedes that the expectations of the putative class are critical to determining whether they were harmed—and acknowledges that he has no evidence "sufficient to back up [his] assertion that all class members, regardless of their specific circumstances, can be shown to have suffered injury without individualized inquiry." *Stiner*, 665, F. Supp. 3d at 1207; *see* Suehiro Decl., Ex. D (Pl. Tr. 206:7-17). Absent common proof that all class members were harmed, Plaintiff has not met his burden to show that the class satisfies predominance. *See Stiner*, 665 F. Supp. 3d at 1198 (whether and to what extent putative class members were concretely injured by defendant's conduct presented individualized inquiries).[7]

### 3.    Plaintiff's Damages Model is Flawed.

Even if Plaintiff could prove that customers were damaged on a classwide basis (he cannot), his full refund damages model is flawed because it presumes that "but for" the allegedly wrongful autorenewals by Whoop, members of the class would not have signed up for Whoop memberships or opted to be renewed. Mot. at 15. Plaintiff cannot, with common proof, show that customers were not aware of autorenewals, or that "but for" allegedly wrongful autorenewals, they would not have renewed memberships because **(1)** Plaintiff himself used his membership throughout several renewal periods and did not attempt to cancel until last year because he claimed his device stopped working, Suehiro Decl., Ex. L (Pl. Dep. Ex. 10); *id.*, Ex. D (Pl. Tr. 126:21-127:13; 171:20-22;

---

[7] Plaintiff's inability to show that all of the putative class members were harmed also precludes certification of an injunction class.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

173:16-180:25); Ex. K (Nos. 9-12); **(2)** members of the putative class also used their memberships during renewal periods, Pl. Ex. 10 (ECF No. 44-10)—and thus derived the full benefit of their membership, *see In re Tobacco Cases II*, 240 Cal.App.4th 779, 795-96 (2015) (citing "[s]everal cases" holding that "a full refund is unavailable . . . when the product had value to consumers notwithstanding the alleged deceptive advertising"); *see also In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) ("Because the Full Refund model makes no attempt to account for benefits conferred upon [p]laintiffs, it cannot accurately measure classwide damages"); *Day v. AT & T Corp*., 63 Cal.App.4th 325, 340 (1998) (plaintiffs not entitled to seek "restoration" of money under the UCL where they received "the full value of" of pre-paid phone cards, "regardless of whether [they were] improperly induced to purchase the card[s] in the first place"); and **(3)** Plaintiff's damages model incorrectly presumes that non-use of the Whoop app is common evidence that users were auto renewed against their intentions.  Suehiro Decl., Ex. D (Pl. Tr. 171:20-22); Ex. A (N.G. Tr. 208:6-211:18).

**B.**    <u>**Plaintiff's Claims are Not Typical of the Putative Class or Subclass.**</u>

Plaintiff cannot demonstrate that his claims are typical of the putative class.  Fed. R. Civ. P. 23(a)(3).  Instead, (1) Plaintiff has a limited understanding of his purchase experience; and (2) Plaintiff concedes that experiences and interests differ among the class.  All of these factors defeat typicality.  *Gardner v. Health Net, Inc*., 2010 WL 11579028, at *3-4 (C.D. Cal. Sept. 13, 2010) ("[T]he typicality requirement is not met in an action that would require individualized inquiries regarding causation and injury.").

**1.**    **Plaintiff has a limited understanding of his own purchase experience**.

Plaintiff's deposition revealed a limited understanding of his own Whoop purchase experience—and, consequently, an absence of evidence about his personal purchase experience— to support the claims he purports to bring.  Plaintiff did not recall what the Whoop sign up page looked like, and he also could not recall (and later denied) that the screenshot images in the Complaint were the ones he personally viewed when he made his purchase.  Suehiro Decl., Ex. D (Pl. Tr. 91:17-92:3; 187:13-189:18; 193:20-194:17).  Plaintiff testified "it's possible" he received

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1  an auto renewal notice from Whoop. *Id.* (Pl. Tr. 142:6-9; 145:1-3; 157:25-158:6). And, he testified

2  that its "very possible" he received some communications from Whoop that he did not even open.

3  *Id.* (Pl. Tr. 196:1-8). Plaintiff has "no idea" if his membership is even currently active. *Id.* (Pl. Tr.

4  112:19-113:12; 182:21-24; 182:25-184:10; 173:16-180:25).

**2.    Plaintiff's expectations and interests differ from those of the class.**

6  Plaintiff conceded that he "can't speak" to the claims or expectations of other class

7  members, *id.* (Pl. Tr. 199:4-7, 206:12-1), and that whether or not he or putative class members were

8  harmed by the alleged inadequate disclosures by Whoop is largely driven by their own individual

9  expectations. *Id.* (Pl. Tr. 206:7-11). In fact, Plaintiff testified that he *does not know* if fellow class

10 members even were actually harmed by Whoop and admits he does not know what membership

11 options putative class members saw. *Id.* (Pl. Tr. 197:22-198:1; 198:7-10; 198:17-20; 206:7-17).

12 **C.    Plaintiff is Not an Adequate Class Representative.**

13 Finally, Plaintiff's pursuit of class certification fails for the additional reason that he is not

14 an adequate representative of the class due, in large part, to the fact that the evidence shows

15 inconsistencies between the Complaint and the facts. *See supra*; *see also Feske v. MHC Thousand*

16 *Trails Ltd. P'ship*, 2013 WL 1120816, at *12 (N.D. Cal. Mar. 18, 2013) (inconsistencies between

17 complaint and deposition testimony); *Shields v. Smith*, 1991 WL 319032, at *4 n.2 (N.D. Cal. Nov.

18 4, 1991) (citing multiple cases holding that contradictions between plaintiffs' testimony and the

19 complaint serve as "obvious and clear" evidence supporting denial of class certification). Plaintiff

20 demonstrated unfamiliarity with (1) the allegations in the case and (2) his role as a class

21 representative. Plaintiff testified that he "can't speak" to the claims of other class members, Suehiro

22 Decl., Ex. D (Pl. Tr. 199:4-7), and was "not sure" whether he was seeking to represent any subclass

23 in this suit. *Id.* (Pl. Tr. 198:24-199:1). He also testified that he did not take the screenshots in the

24 Complaint from his personal phone; in fact, he does not know when the screenshots were taken and

25 he does not know who took them. *Id.* (Pl. Tr. 123:25-124:7).

26 For these reasons and those discussed below, Plaintiff cannot satisfy the requirements of

27 Rule 23.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

## IV.    <u>LEGAL STANDARD</u>

"[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance with' Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation omitted). Courts must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 are met, which will frequently entail "overlap with the merits of the plaintiff's underlying claim." *Id.* "Failure to carry the burden on any Rule 23 requirement precludes certifying a class action." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004) (citing *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 152 (N.D. Cal. 1991)). While the Court may be obligated to "accept plaintiffs' substantive allegations as true," that "does not mean that the Court must accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action." *Burkhalter Travel Agency*, 141 F.R.D. at 152 (citation omitted).

## V.    <u>ARGUMENT</u>

### A.    <u>A Class Trial Will Not Generate Common Answers to Key Questions; Individualized Issues Predominate.</u>

#### 1.    <u>Plaintiff Cannot Prove Classwide Violation of the ARL</u>.

Plaintiff cannot prove with classwide evidence that Whoop "automatically renew[ed] class members without adequate disclosure or consent, in violation of the ARL." Mot. at 8. The adequacy of the Whoop disclosures turns on, among other things: (1) whether the pre-purchase disclosures on the Whoop website were "clear and conspicuous . . . and in visual proximity" to the request for consent to the offer; and (2) whether Whoop obtained affirmative consent. *Id.* at 9; Cal. Bus. & Prof. Code §§ 17601, 17602. Because putative class members made purchases at different times, with different devices and user settings, among other different circumstances, it cannot be presumed that all customers uniformly chose to purchase a membership without seeing the disclosures displayed by Whoop. Nor can it be presumed that, to the extent a class member did not see a disclosure, it was because of Whoop's placement as opposed to the unique nature of that class member's device or settings. Moreover, whether or not a putative class member consented to automatically-renewing purchases is inherently an individualized inquiry. These individual experiences in the enrollment process create questions about liability as to each class member which

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

predominate over any common issues. Further, such numerous individualized issues—requiring highly-tailored inquiries into each putative class member's unique factual circumstances—render class treatment an inferior method of adjudicating Plaintiff's claims.

**a.** **Whether or Not a Putative Class Member Viewed Disclosures on Whoop.com is Highly Individualized**.

Plaintiff cannot prove with common evidence that all customers who purchased a Whoop membership online through whoop.com saw the automatic renewal disclosures in the same way. Plaintiff argues that because Mr. Giacalone testified that the "join flow" steps were similar between October 2019 and the present, Mot. at 9, the question of whether disclosures by Whoop appeared across the putative class in a "clear and conspicuous" manner can be decided classwide. Mot. at 9, 10.[8] Not so. Whether text is "clear and conspicuous" is highly variable and can be impacted by a number of individualized factors, such as user device settings and preferences; location of subject text; and location of other text. *See* Cal. Bus. & Prof. Code § 17601(c); *see also Turnier*, 517 F. Supp. 3d at 1139-40; *Hall*, 2019 WL 8107879, at \*3).[9] All of those factors create individualized issues here:

*First*, plaintiff has no common evidence that all class members made purchases using the same device, using the same orientation, set with the same preferences. All of these factors impact how and where disclosures by Whoop appeared to that individual customer during their enrollment process. *See, e.g.*, *Hall*, 2019 WL 8107879, at \*3; *Turnier*, 517 F. Supp. 3d at 1139-40.   In other words, a putative class member's own settings—and not Whoop's placement or appearance of disclosures—could impact how and whether they viewed the disclosures by Whoop.

*Second*, as Mr. Giacalone testified, as between the mobile and desktop versions of the Whoop website, things moved over time, Suehiro Decl., Ex. A (N.G. Tr. 366:22-267:2), which creates variation in how the Whoop website presented for each member of the class. For example,

---

[8] The *Leanne Tan* case Plaintiff cites for this proposition (Mot. at 10) was not decided under the ARL, and does not discuss whether disclosures were "clear and conspicuous" to consumers. *Leanne Tan* v. *Quick Box, LLC*, 2024 U.S. Dist. LEXIS 6935, at \*7 (S.D. Cal. Jan .12, 2024).

[9] *Mobile Emergency Housing Corp.*, 2023 WL 9550942, at \*12 (determining whether a putative class member even viewed HP's disclosures constituted an individualized inquiry sufficient to defeat class certification under Rule 23(b)(3)).

the Checkout Disclosure Change Log, Pl. Ex. 7, and Plaintiff's Summary of Checkout Page Disclaimer, Pl. Ex. 8, show that the position of text—including the automatic renewal disclaimer—moved over time.  Mr. Giacalone also testified that Whoop is always "iterating" on its "Choose Membership" page. Suehiro Decl., Ex. A (N.G. Tr. 44:15-17).  Specifically, Mr. Giacalone testified that the disclaimer moved from below to above the "place order" button.  *Id.* (N.G. Tr. 97:11-15; 100:14-25).  He also testified that Whoop subscription plan offerings varied over time (*id.*, Ex. J (N.G. Tr. 274:2-3), and that as a result, there may be additional blank space on the website in which disclosures or other text could appear.[10]  *Id.* (N.G. Tr. 128: 21-24).  Plaintiff confirmed that the screenshot included in the Complaint did not show the exact layout of the screen that he saw at the time of his purchase.  *Id.*, Ex. D (Pl. Tr. 128:3-10).  In short, no common proof exists as to which putative class members viewed which of Whoop's disclosures and how they viewed them.  In the absence of common proof, Plaintiff cannot satisfy predominance.

### b.  Members' Consent to Automatic Renewal is Highly Individualized.

Likewise, whether the putative class members provided consent presents an individualized inquiry incapable of classwide resolution.  *Kihn*, 2022 WL 18935, at *2 n.3 ("[T]he predominance problem presented by individualized questions of consent defeats class certification.").

Plaintiff contends that Whoop's "method" of obtaining affirmative consent—by placing an order online—was the same for all class members.  Mot. at 11.  But, Plaintiff cannot show with common evidence that each class member did or did not consent to automatic renewal of their membership when he or she placed their order—regardless of uniformity in the "method."  Consent is a highly individualized inquiry requiring individualized proof.  *See Corley v. Google, Inc.*, 316 F.R.D. 277, 285 (N.D. Cal. 2016) (recognizing the "'intensely individualized' nature of consent").

What customers understood or thought they were agreeing to when they were placing an order depends on what they saw, which varied among the class, *see supra*, their expectations, and

---

[10] Plaintiff's claim that "[c]ommon questions predominate materiality and reliance" is misplaced. Mot. at 12-13.  Unlike in the cases Plaintiff cites, here the inquiry is not whether Whoop's statements would have been interpreted differently among the class, but how Whoop's disclosures appeared to individual members in the particular circumstances in which they made their purchase.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

what they understood to be purchasing at the time—which Plaintiff acknowledges varies among the class.  Suehiro Decl., Ex. D (Pl. Tr. 206:7-17); *see In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 (N.D. Cal. Mar. 18, 2014) (holding that "determining to what disclosures each Class member was privy" would "lead to numerous individualized inquiries" on the issue of consent that would "overwhelm any common questions"); *see also Lewallen v. Medtronic USA, Inc.*, 2002 WL 31300899, at *4 (N.D. Cal. Aug. 28, 2002).

### 2.    Individual Inquiries Predominate the Question of *Whether* Customers Were Damaged.

Plaintiff's purported common model of "how much" putative class members are entitled to in damages is premature and flawed because it incorrectly presumes all class members were harmed to begin with.  The question of *"whether* class members actually suffered an injury sufficient to confer Article III standing" is a question that should be considered at the class certification stage. *Stiner*, 665 F. Supp. 3d at 1206.   Rule 23 "requires a district court to determine whether individualized questions [regarding standing] would predominate over common questions." *Id.* (citing *Olean*, 31 F. 4th at 668 n.12).

*Whether* putative class members were actually injured cannot be answered without addressing individualized questions about customer expectations and device usage.  *Id.*  For example, whether a member was harmed depends on whether they knew that their membership would be automatically renewed and whether they intended their membership to continue.  Plaintiff concedes that the expectations of the putative class are critical to determining whether they were harmed—and acknowledges that he has no evidence "sufficient to back up [his] assertion that all class members, regardless of their specific circumstances, can be shown to have suffered injury without individualized inquiry." *Id.* at 1207; *see* Suehiro Decl., Ex. D (Pl. Tr. 206:7-17).  Plaintiff testified that he does not know if his fellow class members were harmed as a result of the practices alleged in the complaint.  *Id.*  And, he testified that whether class members were harmed by being automatically renewed depends on their "expectation[s]" and "assumption[s]," which he does not know.  *Id.*  Absent common proof that all class members were harmed, Plaintiff has not met his

MORGAN LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1    burden to show that the class satisfies predominance. *See Stiner*, 665 F. Supp. 3d at 1198 (whether

2    and to what extent putative class members were concretely injured by defendant's conduct

3    presented individualized inquiries).[11]

### 3.    Plaintiff's Damages Model is Flawed.

5        Even if Plaintiff could prove that customers were damaged on a classwide basis (he cannot),

6    his full refund damages model is flawed because it presumes that "but for" the allegedly wrongful

7    autorenewals by Whoop, members of the class would not have signed up for Whoop memberships

8    or opted to be renewed.  Mot. at 15 (describing as Plaintiff's theory of harm that Whoop "tricked

9    class members into signing up for auto renewals that they ***were not aware*** of and ***did not want***").

10   Plaintiff cannot, with common proof, show that customers were not aware of autorenewals, or that

11   "but for" allegedly wrongful autorenewals, they would not have renewed memberships because (1)

12   Plaintiff himself used his membership throughout several renewal periods and did not attempt to

13   cancel until last year;[12] (2) members of the putative class also used their memberships during

14   renewal periods—and thus derived the full benefit of their membership; and (3) Plaintiff's damages

15   model incorrectly presumes that non-use of the Whoop app is common evidence that users were

16   auto renewed against their intentions.

17        *First*, Plaintiff's use of his device during renewal belies any notion that that "if [he] had

18   known the truth, he would not have signed up for an Annual Membership in the first place." Compl.

19   ¶ 67.  Plaintiff used his membership throughout several renewal periods and did not attempt to

20   cancel his membership (unsuccessfully) until last year—noting that the "biggest concern that

---

[11] Plaintiff's inability to show that all of the putative class members were harmed also precludes certification of an injunction class. *See Daro v. Superior Court*, 151 Cal.App.4th 1079, 1086 (2007) (reversing order granting injunctive relief where there was no injury in fact resulting from the alleged violation of the statutory scheme); *see also id.* at 1100.

[12] Plaintiff appears to contend that he and the class are entitled to damages even for the initial membership period they signed up for.  There is no question Plaintiff consented to paying for one year and so it is not logical he or the class should receive damages for their initial membership periods.  This issue was raised in a discovery dispute and Magistrate Judge Kim found that, "in this case, Plaintiff alleges damages caused by the automatic renewal of the subscription, not the initial subscription period.  Given the nature of harm in this case, the information about the value of the initial term of membership is not relevant."  ECF No. 41.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1    caused [him] to cancel" was the fact that his devices didn't charge anymore, and not that his

2    membership had automatically renewed. Suehiro Decl., Ex. L (Pl. Dep. Ex. 10); *id.*, Ex. D (Pl. Tr.

3    171:20-22). In fact, Plaintiff acknowledged that it was possible that he saw the renewal language

4    disclosure at the time of his purchase in 2021. *Id.*, Ex. D (Pl. Tr. 126:21-127:13). But, despite

5    knowing that he could cancel his membership, he did not attempt to do so. *Id.* (Pl. Tr. 151:19-

6    152:4). He also acknowledged that the receipt for his purchase of a renewal membership disclosed

7    his purchase of an initial term, and that a renewal would run from June 22, 2022 through June 22,

8    2023 for the amount of $288. *Id.* (Pl. Tr. 100:6-102:5). Again, Plaintiff did not attempt to cancel

9    his membership. Rather, he used the Whoop services for two full membership periods. *Id.* (Pl. Tr.

10   203:6-11); *see id.*, Ex. K (Nos. 9, 11) (admitting that he wore a device between April 22, 2021, and

11   April 22, 2022, and between June 22, 2022, and June 21, 2023); *id.*, (Nos. 10, 12) (admitting he

12   used the Whoop app at least once between April 22, 2022, and June 21, 2022, and between June

13   22, 2022, and June 21, 2023). Only on July 21, 2023—two years after his purchase, and two years

14   of use—did Plaintiff contact Whoop's membership services to cancel his membership because he

15   claimed his device stopped working. *Id.*, Ex. D (Pl. Tr. 171:20-22; 173:16-180:25).

16        *Second*, Whoop data confirms that California users generally also continued to use their

17   Whoop memberships throughout renewal periods. REDACTED

18   

19   

20   

21   

22   

23        Moreover, because Plaintiff, and putative class members who continued to use their Whoop

24   memberships throughout renewal periods, derived the full benefit of those memberships, any

25   damages to which Plaintiff and the putative class members may be entitled would need to be offset

26   by the value derived from their memberships. *See In re Tobacco Cases II*, 240 Cal.App.4th at 795-

27   96 (citing "[s]everal cases" holding that "a full refund is unavailable . . . when the product had

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

value to consumers notwithstanding the alleged deceptive advertising"); *see also In re POM Wonderful LLC*, 2014 WL 1225184, at *3 ("Because the Full Refund model makes no attempt to account for benefits conferred upon [p]laintiffs, it cannot accurately measure classwide damages."); *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 340 (1998) (plaintiffs not entitled to seek "restoration" of money under the UCL where they received "the full value of" of pre-paid phone cards, "regardless of whether [they were] improperly induced to purchase the card[s] in the first place").[13]

*Third*, Plaintiff's damages model incorrectly presumes that non-use of the app and lapses in data uploads are common evidence that members of the putative class purchased auto renewing Whoop memberships that they did not want. Mot. at 16-17. Even if Plaintiff could show classwide "non-use" during renewal periods (and he cannot, as Plaintiff's experience instructs, a customer's presumed "non-use" of their device can result from a variety of factors unrelated to unwanted memberships or alleged non-disclosures.[14] For example, Plaintiff testified that his device stopped working, Suehiro Decl., Ex. D (Pl. Tr. 171:20-22), and, at times, he forgot to charge it. *Id.* (Pl. Tr. 170:11-13). With regard to the class, Mr. Giacalone testified that "a lot" of users "at times go [] on breaks" from use of their devices. *Id.*, Ex. A (N.G. Tr. 186:1-4). For example, users may stop wearing their device in the offseason, when they're not training, or even just for the weekend. *Id.* (N.G. Tr. 208:15-17). Moreover, there is significant value in a Whoop membership beyond using the Whoop strap and uploading data. *Id.* (N.G. Tr. 185:15-186:1). Users can "engage with the social features in the app" and can interface with historic data. *Id.*; *see also id.* (N.G. Tr. 211:16-18). Members can connect the heart rate feature to a Peloton or other third-party device, participate

---

[13] Plaintiff's model admittedly does not attempt to offset the value derived from membership. To the contrary, under Plaintiff's damages model, a Whoop member who (1) entered into an annual subscription four years ago who knew they would be charged annually, (2) received emails alerting them their subscription would be renewed, (3) wanted to continue using the Whoop services, and (4) enjoys use of their Whoop services knowingly every day—even up to today—would be entitled to a full refund. Even if Plaintiff contends that putative class members are not entitled to damages from their initial subscription period, that would mean the class member described in the prior sentence would be entitled to three years of payment even though they knowingly and intentionally were automatically renewing. This alone demonstrates the fallacy of the proposed damages model and renders Plaintiff's "unconditional gift" theory misplaced.

[14] For these reasons as well, it is impossible to certify Plaintiff's "No Use Autorenewal Subclass" without delving into individualized issues about whether and why plaintiffs appear to have not used their "renewals." Mot. at 17.

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1   in community features, i.e., interact with members of the Whoop community, attend in-person

2   Whoop events, and interface with an AI coach.[15]  *Id*. (N.G. Tr. 209:4-211:15).  These benefits

3   cannot be measured based on use of the app alone.

4               **B.**      **Plaintiff's Claims are Not Typical of the Putative Class or Subclass.**

5        Plaintiff cannot demonstrate that his claims are typical of the putative class.  Fed. R. Civ.

6   P. 23(a)(3).  "[T]he typicality requirement is not met in an action that would require individualized

7   inquiries regarding causation and injury."  *Gardner v. Health Net, Inc*., 2010 WL 11579028, at *3-

8   4 (C.D. Cal. Sept. 13, 2010).  Also, "variability in circumstances and interests of the putative class

9   members invalidates the inference of typicality required by Rule 23[.]"  *Allied Orthopedic*

10  *Appliances, Inc. v. Tyco Healthcare Group, L.P*., 247 F.R.D. 156, 178 (C.D. Cal. Dec. 21, 2007).

11  By Plaintiff's own account, his Whoop experience is anything but "typical."  Mot. at 7-8.  Instead,

12  Plaintiff (1) has a limited understanding of his purchase experience; and (2) concedes that

13  experiences and interests differ among the class.  All of these factors defeat typicality.

14               **1.**      **Plaintiff has a limited understanding of his own purchase experience**.

15       Plaintiff's deposition revealed a limited understanding of his own Whoop purchase

16  experience—and, consequently, an absence of evidence about his personal purchase experience—

17  to support the claims he purports to bring.  Specifically, Plaintiff did not recall what the Whoop

18  sign up page looked like.  Suehiro Decl., Ex. D (Pl. Tr. 91:17-22).  He could not recall (and later

19  denied) that the screenshot images in the complaint were the ones he personally viewed when he

20  made his purchase.  *Id.* (Pl. Tr. 91:23-92:3; 187:13-189:18; 193:20-194:17).  Rather, Plaintiff

21  acknowledged that the screenshots included in the operative complaint do ***not*** show the exact layout

22  of the screen that he saw at the time of his purchase and that the screen he viewed could have

23  included additional text not included in the examples in the operative complaint.  *Id*., Ex. D (Pl. Tr.

24

---

25  [15] For the same reasons, the Court should reject Plaintiff's perfunctory request to certify an
    injunctive relief class.  Plaintiff cannot proffer common proof showing that customers were not
26  aware of autorenewals, or that they did not want them.  Given the significant variations in whether
    and how Plaintiff and the putative class members used (or cancelled) their memberships during
27  renewal periods, Plaintiff's request for "uniform relief" that "would benefit the whole proposed
    class" is implausible and misplaced.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1   128:3-10; 128:21-24; 187:13-189:18; 193:20-194:17).

2       During his deposition, Plaintiff had no recollection of the receipt of his initial purchase of

3   an annual Whoop membership, nor the amount charged. *Id.* (Pl. Tr. 96:2-23). He testified "it's

4   possible" he received an auto renewal notice from Whoop. *Id.* (Pl. Tr. 142:6-9; 145:1-3; 157:25-

5   158:6). And, Plaintiff testified that its "very possible" he received some communications from

6   Whoop that he did not even open. *Id.* (Pl. Tr. 196:1-8). In fact, Plaintiff acknowledged that it was

7   possible that he ***did see*** the renewal disclosure language at the time of his purchase. *Id.* (Pl. Tr.

8   126:21-127:13). Plaintiff has "no idea" if his membership is even currently active. *Id.* (Pl. Tr.

9   112:19-113:12; 182:21-24; 182:25-184:10; 173:16-180:25; 182:21-24). Plaintiff's limited

10  recollection of his own purchase experience casts doubt on his ability to prove on an individual

11  basis—let alone a classwide basis—that some shortcoming in the disclosures by Whoop rather than

12  his own oversight or lack of diligence or attention caused his alleged harm. *See Turnier*, 517 F.

13  Supp. 3d at 1140 (dismissing plaintiff's ARL claim because he failed to plausibly show causation).

14           **2.      Plaintiff's expectations and interests differ from those of the class.**

15      Plaintiff conceded that he "can't speak" to the claims or expectations of other class

16  members, Suehiro Decl., Ex. D (Pl. Tr. 199:4-7, 206:12-1). In fact, Plaintiff testified that he ***does***

17  ***not know*** if fellow class members even were actually harmed by Whoop and admits he does not

18  know what membership options putative class members saw. *Id.* (Pl. Tr. 206:7-11). As for his

19  own expectations, Plaintiff testified that, at the time he purchased his annual Whoop membership,

20  he was aware that he could cancel it, and would not be charged for a subsequent membership term.

21  *Id.* (Pl. Tr. 151:19-152:4). He also testified that he understood the term "billed annually" to mean

22  "[b]illed on an annual basis," i.e., billed once every year. *Id.* (Sanderson Tr. 134:14-22). And,

23  Plaintiff acknowledged that he received notifications from his bank about credit card charges from

24  Whoop for his renewal terms in June 2022 and June 2023. *Id.*, Ex. K (Responses to Nos. 36, 37);

25  *id.*, Ex. D (Sanderson Tr. 102:16-103:16).

26       **C.      Plaintiff is Not an Adequate Class Representative.**

27      Plaintiff's pursuit of class certification fails for the additional reason that he is not an

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1    adequate class representative. Plaintiff's "conclusory" and "generic" allegations of adequacy, Mot.

2    at 8, are not enough to warrant certification. *Burkhalter*, 141 F.R.D. at 153-154. "[A] party who is

3    not familiar with basic elements of its claim is not considered to be an adequate representative for

4    the class." *Id.* (plaintiff unfamiliar with basic elements of claim was inadequate) (citing *Koenig v.*

5    *Benson*, 117 F.R.D. 330, 337 (E.D.N.Y. 1987)). Nor is a proposed class representative adequate

6    where, like here, the evidence shows inconsistencies between the named plaintiff's complaint and

7    the facts. *See Feske*, 2013 WL 1120816, at *12. Plaintiff's failure to satisfy the adequacy

8    requirement of Rule 23(a) alone requires denial of class certification. *See May v. Gladstone*, 562

9    F. Supp. 3d 709, 712 (C.D. Cal. 2021) (holding it "need not address the other issues raised"

10   regarding certification after concluding that class representative was inadequate).

11           Plaintiff's deposition testimony casts doubt on his adequacy as class representative.

12   Independent of his apparent failure to recall the circumstances of his own Whoop purchase

13   experience, *supra* Section V.B., which alone renders him unsuitable as a class representative,

14   Plaintiff also demonstrated unfamiliarity (1) with the allegations in the case and (2) with his role as

15   a class representative. Plaintiff testified he "can't speak" to the claims of other class members,

16   Suehiro Decl., Ex. D (Pl. Tr. 199:4-7), and was "not sure" whether he was seeking to represent any

17   subclass in this suit. *Id.* (Pl. Tr. 198:24-199:1). He testified that he does not know when the

18   screenshots in the Complaint were taken and he does not know who took them. *Id.* (Pl. Tr. 123:25-

19   124:7). As for his role as class representative, Plaintiff testified to that he could not speculate or

20   speak to what putative class members saw as the Whoop checkout page, *id.* (Pl. Tr. 197:22-198:1;

21   198:17-20); he also was not sure what type of Whoop memberships class members purchased, and

22   "could not speak to anything that anyone else has seen . . . ," *id.* (Pl. Tr. 198:7-10). Finally, Plaintiff

23   could not speak to whether any proposed class members intended to renew their Whoop

24   membership(s). *Id.* (Pl. Tr. 198:11-14). This lack of adequacy renders certification improper.

25   **VI.    <u>CONCLUSION</u>**

26           For the forgoing reasons, Whoop respectfully requests that the Court deny Plaintiff's

27   Motion for Class Certification.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB

1

Dated: November 23, 2024                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                                         By  /s/ *Megan Suehiro*

4                                                             Joseph Duffy
                                                            Megan Suehiro
5
                                                            Attorneys for Defendant,
6                                                           Whoop, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-05477-CRB