United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DONRICK SANDERSON, individually and on behalf of all others similarly situated, | Case No. 3:23-CV-05477-CRB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART CLASS CERTIFICATION** |
| v. |  |
| WHOOP, INC., |  |
| Defendant. |  |

This is a proposed class action arising from alleged violations of California state consumer protection laws.  Plaintiff Donrick Sanderson alleges that Whoop, Inc. did not adhere to California's Automatic Renewal Law (ARL), thereby deceiving consumers and illegally charging them for continued memberships.  Plaintiff moves to appoint Sanderson as class representative and Dovel & Luner, LLP as class counsel.  The Court GRANTS Plaintiff's motion to certify a 23(b)(3) class and subclass and DENIES Plaintiff's motion to certify a 23(b)(2) class.

## I.    BACKGROUND

Plaintiff filed suit in 2023, alleging that Whoop sold an auto-renewing membership to Plaintiff without properly disclosing the terms of the auto-renewal, in violation of the ARL.  See generally Compl. (dkt. 1); First Am. Compl. (dkt. 29); Second Am. Compl. (SAC) (dkt. 42).  California's ARL prohibits companies from enrolling consumers in auto-

renewing memberships without making "clear and conspicuous" disclosures of specific "automatic renewal offer terms" "in visual proximity . . . to the request for consent to the offer."  Cal. Bus. & Prof. Code §§ 17601(a)(2), 17602(a)(1).

Whoop sells wearable fitness trackers and a subscription-based membership that allows users to access associated tracking software.  SAC ¶ 3.  Although users initially sign up for an "Annual Membership," a "24 Month Membership," or a "1 Month Free Trial," at the end of that initial membership period, Whoop automatically enrolls users in a new Annual Membership billed on an auto-renewing basis.  See id. ¶¶ 27–28.  Plaintiff alleges that Whoop's pre-purchase disclosures violated the ARL because they did not include required terms and were not presented in a "clear and conspicuous" way.  Id. ¶ 29.  Plaintiff also alleges that Whoop violated the ARL by failing to give adequate post-purchase acknowledgements.  Id. ¶ 57.  Plaintiff specifically alleges that Sanderson purchased a Whoop Membership in 2021 and that Whoop auto-renewed that membership twice, without his knowledge or consent.  Id. ¶¶ 63–71.

Plaintiff has brought three claims against Whoop: one under California's False Advertising Law (FAL); one under the unlawful, unfair, and deceptive prongs of California's Unfair Competition Law (UCL); and one under California's Consumer Legal Remedies Act (CLRA).  All three causes of action rely on the alleged ARL violations.  Id. ¶¶ 80–118.  This Court has diversity jurisdiction.  See 28 U.S.C. § 1332(a).

Plaintiff seeks to certify the following class:

> All persons in California who purchased a Whoop Membership through the Whoop website, were enrolled in [Whoop's] automatically renewing Whoop Membership subscription, and were automatically renewed and charged for at least one renewal term after their initial membership or commitment

period ended, during the applicable statute of limitations.

Mot. (dkt. 45) at 6. Plaintiff also seeks to certify the following subclass: "[a]ll members of the Class who were automatically renewed and charged for at least one renewal term that they did not use (the 'No Use Autorenewal' subclass)." Id. Whoop opposes Plaintiff's motion. Opp'n (dkt. 52) at 20.

## II.    LEGAL STANDARD

Plaintiffs bear the burden of proving, by a preponderance of the evidence, that class certification is appropriate. See Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001). Certification is a two-step process.

First, plaintiffs must meet the four explicit requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542–43 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).

Second, plaintiffs must show that the proposed class meets at least one of the provisions of Rule 23(b). Fed. R. Civ. P. 23(b); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These are known as the predominance and superiority requirements. Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."

At the class certification stage, the Court considers the merits of a plaintiff's case "only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." In re Diamond Foods, Inc. Sec. Litig., 295 F.R.D. 240, 245 (N.D. Cal. 2013) (quoting Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013)).

## III.    DISCUSSION

First, this order will analyze whether Plaintiff has met the 23(a)(1) numerosity, 23(a)(3) typicality, and 23(a)(4) adequacy requirements.  Second, this order will analyze whether Plaintiff has met the 23(a)(2) commonality and 23(b)(3) predominance requirements.  Third, this order will analyze whether Plaintiff has met the 23(b)(3) superiority requirement.  Fourth, this order will discuss Plaintiff's request for 23(b)(2) certification.  The Court concludes that Plaintiff has met all of the 23(a) and 23(b)(3) requirements, and certifies a 23(b)(3) class and subclass.  The Court declines to certify a 23(b)(2) class.

### a.    Rule 23(a) Numerosity, Typicality, and Adequacy

#### i.    Numerosity

Under the first Rule 23(a) factor, a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." Krzesniak v. Cendant Corp., No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518, at *19 (N.D. Cal. June 20, 2007).

Whoop does not contest this requirement.  Plaintiff's ███-member class is

4

sufficiently numerous, as is Plaintiff's subclass of ███████████ Plaintiff has

satisfied numerosity.  Mot. at 7.

### ii.    Typicality

Under the third Rule 23(a) factor, a representative party's claims or defenses must

be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose

of the typicality requirement is to assure that the interest of the named representative aligns

with the interest of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.

1992) (citations omitted).  "Like the commonality requirement, the typicality requirement

is 'permissive' and requires only that the representative's claims are 'reasonably co-

extensive with those of absent class members; they need not be substantially identical.'"

Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting Hanlon v. Chrysler

Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

Whoop contends that Sanderson's claims are not typical of other class members'

claims for several reasons.  First, Whoop notes that Sanderson could not remember details

of the Whoop website's appearance.  Opp'n at 18; Suehiro Decl. (dkt. 52-1) Ex. D

(Sanderson Dep.) at 91:17–92:3, 187:13–189:18 (Sanderson could not recall "any of the

colors" on the webpage or the size of the font on the webpage).  Second, Whoop states that

Sanderson admitted that the screenshot images from the complaint were not identical to the

page he viewed at time of his purchase.  Opp'n at 18; Suehiro Decl. Ex. D (Sanderson

Dep.) at 193:20–194:17, 128:3–10, 128:21–24.[1]  Third, Whoop asserts that Sanderson

---

[1] When asked what the sign-up page looked like when he visited it, Sanderson said, "it wasn't a hundred percent" identical to the screenshot from the complaint, but the "general layout and structure" were "pretty similar."  See Suehiro Decl. Ex. D (Sanderson Dep.) at 193:20–194:17.  Sanderson agreed that he visited the checkout page before Whoop added a

could not recall the exact amount he was charged for his first purchase, whether he received a receipt, or whether he received an auto-renewal notice. Opp'n at 19. All of this, Whoop argues, means that Sanderson cannot prove that his alleged harm was caused by Whoop's allegedly noncompliant disclosures rather than Sanderson's own oversight. Id. Whoop further contends that because Sanderson said that he could not speak to the claims, expectations, or experiences of other class members, his interests differ from those of the class.[2] Id.

Plaintiff responds that Sanderson can prove his claims with common evidence provided by Whoop. Reply (dkt. 56) at 13. Plaintiff also argues that whether Sanderson can recall details off the top of his head "has nothing to do with typicality." Id. Additionally, Plaintiff maintains that Sanderson's interests align with all class members: all are interested in "recovering against [Whoop] for [Whoop's] ARL violations." Id. According to Plaintiff, Sanderson's claims, and all class members' claims, turn on whether Whoop complied with the ARL. Id. So, Plaintiff asserts, any differences in class members' experiences or expectations "cannot defeat typicality" because they all derive from the same common question and can be proven with common evidence. Id. at 13–14. Plaintiff argues that Sanderson "asserts the same claims as class members, based on the same course of events" and that Sanderson and class members "will make similar

---

free trial option, so that option was not visible on the version of the page that he saw. Id. at 128:3–10. Sanderson acknowledged that "logically speaking," there might have been "some other text there." Id. at 128:21–24.

[2] Whoop does not provide an accurate pincite for this deposition testimony. Whoop asserts that Sanderson "does not know if fellow class members even were actually harmed by Whoop and admits he does not know what membership options putative class members saw," but the cited deposition clip does not contain such testimony. See Suehiro Decl. Ex. D (Sanderson Dep.) at 206:7–11.

United States District Court
Northern District of California

United States District Court
Northern District of California

arguments to prove [Whoop's] liability," so Sanderson's claims are "reasonably coextensive with those of the proposed class."  Mot. at 4, 8; see also Doe v. Neopets, Inc., No. CV 15-8395 DMG (PLAx), 2016 U.S. Dist. LEXIS 206880, at *9–10 (C.D. Cal. Feb. 22, 2016) ("Doe purchased an automatically renewing subscription from the [defendant's] [w]ebsite, as did all other putative class members.  He has satisfied the typicality requirement.").

Whoop does not adequately address the typicality requirement.[3]  Whoop's sole argument against typicality is that if Sanderson does not remember the details of his own purchase experience, it is impossible for his claims to align with those of the class.  See Opp'n at 19.  But this argument does not address the Ninth Circuit's typicality threshold, that "the representative's claims are reasonably co-extensive with those of absent class members."  See Rodriguez, 591 F.3d at 1124 (internal quotation marks omitted).  As Plaintiff notes, both Sanderson's claims and all class members' claims "turn on whether [Whoop] made ARL-compliant disclosures and obtained affirmative consent," so they are reasonably co-extensive.  Reply at 13.  The reliability of Sanderson's own memory does not matter in making that determination.  Regardless of whether Sanderson remembers seeing certain details or receiving an auto-renewal notice, Whoop's own records contain information on what he experienced.  Id.  The typicality inquiry is not concerned with how the class representative will prove his claim, only whether that claim "is reasonably co-

---

[3] This section of Whoop's brief has more to do with the merits of Sanderson's claim.  The only case in this subsection did not address typicality at all, but rather involved a motion to dismiss an ARL claim because of insufficient factual allegations.  See Opp'n at 19 (citing Turnier v. Bed Bath & Beyond Inc., 517 F. Supp. 3d 1132, 1140 (S.D. Cal. 2021)).  Whoop cites no cases holding that a finding of typicality hinges on the merits of a lead plaintiff's claims, or his knowledge of other class members' claims.

extensive" with other class members'.  See <u>Rodriguez</u>, 591 F.3d at 1124 (internal quotation marks omitted).  This is why Whoop's argument misses the mark.  Moreover, Sanderson's interest "aligns with the interest of the class" because all of them seek to recover against Whoop for alleged ARL violations.  See <u>Hanon</u>, 976 F.2d at 508; Reply at 13.  Therefore, Plaintiff has satisfied typicality with respect to its proposed class.

For identical reasons, Plaintiff has satisfied typicality with respect to its proposed subclass.  Sanderson's claims are "reasonably co-extensive" with those of the proposed subclass and Sanderson's interests align with those of the proposed subclass.[4]  See <u>Rodriguez</u>, 591 F.3d at 1124; <u>Hanon</u>, 976 F.2d at 508.

### iii.    Adequacy

Under the fourth Rule 23(a) factor, class representatives must show that they can "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts determine whether the named plaintiffs and counsel (1) "have any conflicts of interest with other class members" and (2) will "prosecute the action vigorously on behalf of the class." See <u>Hanlon</u>, 150 F.3d at 1020.

### 1.    Adequacy of counsel

Whoop does not challenge the adequacy of Plaintiff's counsel.  Plaintiff's counsel, Dovel & Luner, LLP, has no conflicts of interest, has vigorously prosecuted this case up to this point, and has declared their commitment to continue doing so.  See Mot. Ex. 18 (Franzini Decl.) ¶ 5.  Plaintiff has satisfied adequacy of counsel.

---

[4] Plaintiff alleges that Sanderson did not use his Whoop Membership between the fall of 2022 and the time the complaint was filed, in October of 2024.  SAC ¶¶ 69–70.  Thus he is a member of the "No Use Autorenewal" subclass because he did not use his membership for at least one renewal term.  Mot. at 6.

United States District Court
Northern District of California

## 2.    Adequacy of party representative

Whoop contends that Sanderson is not an adequate class representative because "the evidence shows inconsistencies between the Complaint and the facts," Opp'n at 20, but Whoop does not clearly identify these inconsistencies.  Whoop also argues that Sanderson is unfamiliar with certain details of his purchase experience, the allegations in the case, and his role as a class representative.  Id.  Whoop cites to a case in which the court held that "a party who is not familiar with basic elements of its claim is not considered to be an adequate representative for the class."[5]  See id. (citing Burkhalter Travel Agency v. MacFarms Intern., Inc., 141 F.R.D. 144, 153 (N.D. Cal. 1991)).  Whoop argues that because Sanderson testified that he "can't speak" to class members' claims, what class members saw during their purchase experiences, what type of memberships class members purchased, or what class members intend to do with their memberships, he is unable to perform his role as class representative.  Id.  Finally, Whoop contends that because Sanderson did not know "whether he was seeking to represent any subclass in this suit," or who took the screenshots included in the complaint, he is unfamiliar with the case and is therefore inadequate.  Id.

Plaintiff argues that Sanderson is sufficiently familiar with the basis of the suit, the details of his own complaint, and the duties of a class representative.  Reply at 14. Plaintiff identifies numerous excerpts from Sanderson's deposition that demonstrate this.

---

[5] Whoop cites another Northern District case to show that any inconsistencies should be dispositive of the adequacy question.  See Opp'n at 20 (citing Feske v. MHC Thousand Trails Ltd.  Partnership, No. 11–4124 PSG, 2013 WL 1120816, at *12–14 (N.D. Cal. Mar. 18, 2013)).  But the Feske court specifically noted that the proposed class representative's claims "were atypical for other reasons" and that the court did not disqualify them as representatives on the "grounds" of any inconsistencies "alone."  See Feske, 2013 WL 1120816, at *14.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Id.  Plaintiff also argues that Sanderson need not demonstrate familiarity with irrelevant details or legal strategy to satisfy the adequacy requirement.  Id. at 14–15.

Sanderson has no conflicts of interest, and Whoop does not dispute this.  See Hanlon, 150 F.3d at 1020.  Accordingly, the adequacy analysis here hinges on whether Sanderson is able to prosecute the action vigorously on behalf of the class.  See id.  Whoop relies on Sanderson's supposed lack of knowledge of the details of his and other class members' claims to argue that Sanderson is inadequate.  Opp'n at 20 (citing Burkhalter, 141 F.R.D. at 153–54).  But Burkhalter is distinguishable.  In Burkhalter, the proposed class representative "lacked a basic understanding of the identity of some of the defendants in th[e] action," and said that he thought he would be representing a class "composed of the defendants," which indicated that he was an "essentially unknowledgeable client" for class counsel.  141 F.R.D. at 154.  Sanderson is far more knowledgeable than the class representative in Burkhalter.  See id.

Whoop bases its argument that Sanderson "demonstrate[s] unfamiliarity with the allegations in the case" on the following exchanges:

> Q: Are you pursuing the same claims on behalf of all class members?
> A: I can't speak to the claims of other class members . . .
>
> Q: Are you seeking to represent any subclass in this suit?
> A: I am not sure . . .
>
> Q: Were these screenshots . . . taken from your personal phone?
> A: No.
> Q: Do you know on whose phones these screenshots were taken?
> A: I don't know.

Suehiro Decl. Ex. D (Sanderson Dep.) at 200:4–7, 198:24–199:1, 123:25–124:7.  These

excerpts do not demonstrate an egregious lack of familiarity with the case. They merely show that Sanderson is not an attorney.[6] Indeed, Plaintiff successfully demonstrates that Sanderson is familiar with the lawsuit. See Reply Ex. 20 (dkt. 56-4) (Sanderson Dep.) at 186:24–189:3 (demonstrating his knowledge that the lawsuit is about Whoop's alleged failure to clearly and conspicuously provide pre-purchase disclosures), 193:13–19 (acknowledging the details of his complaint), 195:12–17 (outlining additional allegations in his complaint), 197:15–21 (identifying who is included in the proposed class).

Whoop argues that because Sanderson could not "recall the circumstances of his Whoop purchase experience," he is an "unsuitable" representative. Opp'n at 20. But some of these details (such as webpage background color) are irrelevant to Sanderson's claim. And to the extent that other details (such as font size and webpage layout) are material, Sanderson need not be able to recall these details because they "can be found in [Whoop's] records." See Reply at 15; supra Part III(a)(ii). A finding of adequacy does not hinge on the specificity with which a lead plaintiff can recall information. Even where a proposed class representative could not remember material details "without looking at the complaint," one court found that the plaintiff had established adequacy because "lead

---

[6] Other courts have ruled that a class representative need not understand the legal details of their case in order to be adequate. See, e.g., Torliatt v. Ocwen Loan Servicing, 570 F. Supp. 3d 781, 796 (N.D. Cal. 2021) (finding a class representative adequate even though "he did not know what type or amount of damages were sought or whether the case [sought] injunctive relief," because "it is not necessary that [class representatives] be intimately familiar with every factual and legal issue in the case") (citation omitted); In re Tableware Antitrust Litig., 241 F.R.D. 644, 649 (N.D. Cal. 2007) ("Because class representatives serve as a guardian of the interests of the class, the representatives must have some minimal familiarity with the litigation, although a detailed understanding of the theories and facts of the case is not required.") (internal citations omitted); In re Emulex Corp., 210 F.R.D. 717, 721 (C.D. Cal. 2002) ("Plaintiffs' reliance on counsel to file documents and to investigate and litigate the case does not show a failure to supervise or an abdication of their duties as class representatives.").

plaintiffs need only be familiar with the basis for the suit and their responsibilities as lead plaintiffs."  In re LendingClub Sec. Litig., 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (internal citations omitted).

Whoop also contends that Sanderson is unfamiliar with his role as a class representative because when asked about what class members saw on their respective sign-up pages, what type of memberships class members purchased, or whether class members intended to renew their memberships, Sanderson repeatedly responded with "I can't speculate" or "I can't speak to that."  See Suehiro Decl. Ex. D (Sanderson Dep.) at 197:22–198:20.  But, as Plaintiff demonstrates, Sanderson is familiar with his duties as class representative.  See Reply Ex. 20 (Sanderson Dep.) at 196:24–197:11 (explaining the role of the class representative and confirming that he intends to fulfill that role in this case), 201:22–202:1 (explaining his role in speaking for class members should the case reach settlement negotiations); see also Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [lead plaintiff] understands his duties and is currently willing and able to perform them.  The Rule does not require more.").  Furthermore, this is a class of ███████████ and a subclass of ███████████████ .  Mot. at 7.  Sanderson cannot possibly have personal knowledge of each one of their experiences.

Sanderson is more knowledgeable than other class representatives who have been deemed adequate in this district.  See, e.g., O'Connor v. Uber Techs., No. C-13-3826 EMC, 2015 U.S. Dist. LEXIS 116482, at *41, *49 (N.D. Cal. Sept. 1, 2015) (class representative was found to be adequate despite testifying that he did not "have any understanding as to what his responsibilities would be to the extent this case were to be

certified as a class . . ."), <u>rev'd on other grounds</u>, 904 F.3d 1087 (9th Cir. 2018); <u>Mulderrig v. Amyris, Inc.</u>, 340 F.R.D. 575, 584 (N.D. Cal. 2021) (class representative was adequate even though he could not remember important dates, whether those dates impacted his decisions, which court filings he reviewed, or who was involved in alleged misstatements, because he "sufficiently expressed a general understanding of the litigation.").  Overall, Plaintiff demonstrates that Sanderson will vigorously prosecute the action.  Sanderson is an adequate class representative.  <u>See</u> <u>Sayce v. Forescout Techs., Inc.</u>, No. 20-cv-00076-SI, 2024 U.S. Dist. LEXIS 94700, at *57 (N.D. Cal. May 28, 2024) (class representative was adequate where he was "actively involved in the litigation, appeared for [his] deposition, [was] willing to serve as a representative party on behalf of the class, and underst[ood] [his] duties as class representative.").

Therefore, Plaintiff has satisfied adequacy with respect to both class counsel and the class representative.

### b.     Rule 23(b)(3) Predominance and Rule 23(a)(2) Commonality

Predominance and commonality are two separate inquiries.  <u>See</u> Fed. R. Civ. P. 23(a)–(b).  But the parties' arguments about predominance and commonality overlap. Indeed, Whoop references commonality only once in its opposition.  <u>See</u> Opp'n at 6 ("Plaintiff has no common evidence regarding whether and how putative class members viewed these disclosures, precluding a finding of commonality and predominance.").  Both parties discuss predominance far more than they do commonality.  This section will first discuss predominance, then address the parties' cursory dispute over commonality.  The Court concludes that Plaintiff has satisfied the predominance requirement.  It follows that Plaintiff has also satisfied commonality.

### i.    Predominance

Under the first Rule 23(b)(3) factor, a plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). A plaintiff must also present a model of damages that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is "susceptible of measurement across the entire class." Comcast Corp. v. Behrend, 569 U.S. 27, 34–38 (2013). Proof is not a prerequisite for class certification. See Amgen, 568 U.S. at 459 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

Whoop argues that three central issues in this case preclude a finding of predominance, because their resolution will require individualized inquiries that predominate over questions common to the class. See Opp'n 11–18. These issues are (a) ARL compliance, (b) Article III standing, and (c) damages calculations. See id. Plaintiff responds that these are common questions that will be resolved via classwide proof, such that predominance is satisfied. See Reply at 1–12. The Court agrees with Plaintiff.

### 1.    ARL Compliance

Whoop argues that Plaintiff must rely on individualized inquiries to determine ARL compliance, which makes it an individual question. Opp'n at 6. All of Plaintiff's claims hinge on whether Whoop complied with the ARL's disclosure requirements. See supra Part I. Compliance with the ARL requires that: (1) pre-purchase disclosures on the Whoop website were "clear and conspicuous . . . and in visual proximity" to the request for consent; (2) Whoop obtained affirmative consent from users; (3) Whoop's pre-purchase

14

disclosures included the required "automatic renewal terms"; and (4) Whoop provided an adequate post-purchase acknowledgement that included a specified set of terms. See Mot. at 9 (citing Cal. Bus. & Prof. Code §§ 17601(a)(2)–(3), 17602(a)(1)–(4)).[7] This order will refer to these as Requirements 1–4, respectively. This section will discuss each requirement, though Whoop only discussed Requirements 1 and 2. According to Whoop, whether it satisfied Requirements 1 and 2 are individualized questions that defeat predominance. Plaintiff contends that whether Whoop satisfied Requirements 1–4 are common questions that can be answered via common proof, so predominance is met. This section of the order will conclude that each of these four ARL requirements present common questions sufficient to satisfy predominance.

### a.    Requirement 1

Whoop asserts that whether it met Requirement 1 cannot be answered using classwide proof. See Opp'n at 11. According to Whoop, individual users' device settings—such as "vertical or horizontal orientation" and "preferences in terms of font size, browser format, zoom percentages, and similar"—could affect "how and where disclosures by Whoop appeared" to the user. Id. at 7. Whoop also notes that the website layout changed over time, so individual users viewed different versions of the disclosure.[8] Id. Whoop asserts that because personalized device settings are unique to the individual, and users viewed different iterations of the Whoop site depending on when they signed up

---

[7] The ARL carries additional requirements, but Plaintiff only references these four—presumably because additional requirements were added on January 1, 2025, several months after Plaintiff filed its SAC. See Cal. Bus. & Prof. Code §§ 17602(a)(5)–(8).

[8] Changes included that "the disclaimer moved from below to above the 'place order' button" and that "subscription plan offerings varied over time" so "there may be additional blank space on the website in which disclosures or other text could appear." Opp'n at 13.

for their memberships, Plaintiff cannot use classwide evidence to show that disclosures were "clear and conspicuous" and in sufficient proximity to the request for consent. Id. at 6–7.

Plaintiff responds that whether Whoop met Requirement 1 is a common question that can be resolved via classwide proof. Reply at 1. Plaintiff's central contention is that liability under the ARL hinges on whether Whoop published noncompliant disclosures, not whether or how users saw those disclosures. See id. at 3–4. So, Plaintiff contends, whether Whoop satisfied Requirement 1 is a common question that must be resolved via classwide evidence and cannot be subject to individualized inquiries. Id. at 1, 4. Plaintiff argues that individual device settings like screen orientation and zoom percentage "cannot plausibly affect" whether a disclosure was "clear and conspicuous" and "in visual proximity" to the request for consent, so individual inquiries need not be addressed to determine whether Whoop met Requirement 1. Id. at 2; Cal. Bus. & Prof. Code § 17602(a)(1). Plaintiff adds that "website text that is not programmed to be set off by symbols or other marks will not be set off in this manner on any device—regardless of settings or orientation." Reply at 2. Likewise for "text that is programmed to be smaller than surrounding text." Id.

In response to Whoop's argument that the timing of sign-up, and therefore the version of the disclosure that class members saw, is an individualized inquiry, Plaintiff contends that Whoop never published an ARL-compliant disclosure satisfying Requirement 1. See id. at 2; Mot. at 9. Plaintiff asserts that all proposed class members

16

went through "substantially similar join flow steps" regardless of when they joined.[9]  Mot. at 9.  Plaintiff posits that "the general layout of the checkout page, and the type, font, and color of the disclaimer on that page" were "substantially the same for all class members, regardless of when the order was placed, or what device they used."  Id.  Citing Whoop's 30(b)(6) witness, Plaintiff notes that throughout the relevant time period, there were ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████  See id. (citing id. Ex. 3 (dkt. 45-3)

(Giacalone Dep.) at 95:14–96:2, 366:19–25, 394:18–20, 92:6–94:25, 102:9–25).

Plaintiff's arguments are convincing.  At this stage, any alleged differences in the appearance of the sign-up page across the class do not appear to be material.  See Jenson v. Fiserv Trust Co., 256 F. App'x 924, 926 (9th Cir. 2007) (affirming class certification where "the 'center of gravity' of the [defendant's] fraud predominate[d] over details of individual communications.").  Plaintiff's goal in this case is to prove that Whoop "automatically renew[ed] class members without adequate disclosure or consent, in violation of the ARL."  Mot. at 8.  It is plain from the text of the ARL that compliance is determined from the perspective of the publisher, not the user.  Cal. Bus. & Prof. Code § 17602(a)(1) ("It is unlawful for any business that makes an automatic renewal offer or continuous service offer to a consumer in this state to . . . [f]ail to present the automatic

---

[9] Mot. Ex. 3 (Giacalone Dep.) 45:22–46:2, 46:6–12 ████████████████████████

████████████████████████████████████    ████████████████████

renewal offer terms or continuous service offer terms in a clear and conspicuous manner

. . . and in visual proximity . . . to the request for consent to the offer.") (emphasis added).

Moreover, other district courts in California characterize the ARL as establishing

affirmative obligations for publishers to present adequate disclosures to users.  See Zeller

v. Optavia LLC, 22-cv-434-DMS-MSB, 2024 U.S. Dist. LEXIS 51882, at *19 (S.D. Cal.

Mar. 14, 2024) ("The ARL imposes upon Octavia a duty to present the terms of the offer

in a clear and conspicuous manner before the subscription or purchasing agreement is

fulfilled and in visual proximity . . . to the request for consent to the offer . . .") (emphasis

added); Farmer v. Barkbox, Inc., 5:22-cv-01574-SSS-SHKx, 2023 U.S. Dist. LEXIS

222435, at *12 (C.D. Cal. Oct. 6, 2023) ("the ARL creates an obligation to disclose

automatic renewal terms . . .") (emphasis added).  The common question here is whether

Whoop complied with Requirement 1.

It does not matter whether class members had different device settings that resulted

in visually different disclosures.[10]  As Plaintiff notes, if ARL liability turned on how users

saw auto-renewal disclosures, no ARL case could ever be certified as a class—but courts

have certified ARL classes.  See, e.g., Doe, 2016 U.S. Dist. LEXIS 206880, at *15.  Plus,

the Ninth Circuit has explained that "online providers have complete control over the

design of their websites," so "the onus must be on website owners to put users on notice of

---

[10] Even if it did matter, user device settings apply uniformly to the entire display page, rendering Whoop's argument about such settings moot.  Picture a hypothetical disclosure written in small, low-contrast font that is significantly smaller than surrounding text, making it noncompliant with the ARL.  Increasing the font size on one's browser may result in a more prominent disclosure, but it will not make that disclosure larger than the surrounding text.  Thus, users cannot self-remedy the problem of an inadequate disclosure by making it appear larger on their own devices.  Liability still hinges on what the publisher presents to users.

United States District Court
Northern District of California

the terms to which they wish to bind consumers." See Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 857 (9th Cir. 2022) (citations omitted). More importantly, as Whoop's own 30(b)(6) witness noted, certain relevant features about the disclosure did not change during the class period. See Mot. at 9. This undermines Whoop's argument that class members' individual experiences with different versions of the disclosure at different times make this an individualized question.

Whether Whoop satisfied Requirement 1 is a common question.

### b.    Requirement 2

Whoop argues that whether it satisfied Requirement 2 is an individualized question that defeats predominance. Opp'n at 7. Whoop reasons that "[w]hat customers understood or thought they were agreeing to when they were placing an order depends on what they saw, which varied among the class, . . . their expectations, and what they understood to be purchasing at the time." Id. at 13–14. Whoop asserts that because these questions demand individualized answers, Plaintiff cannot satisfy predominance.

Plaintiff argues that whether users' consent via "sign-in wrap" was sufficient to satisfy Requirement 2 is a common question. Reply at 4. Plaintiff contends that California appellate law requires that courts evaluate this type of consent based on objective factors, not subjective ones, so it must be resolved using classwide proof. Id.

Whoop's arguments about consent do not align with recent Ninth Circuit reasoning. A California appellate court in Sellers v. JustAnswer LLC, 73 Cal. App. 5th 444, 460 (2021) discussed how "[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." The Sellers

court found that where the conspicuousness of a textual notice on a webpage did not satisfy the ARL's requirements, the agreement did not bind the plaintiffs because "a reasonably prudent offeree" would not be "on inquiry notice of the terms at issue," precluding mutual assent. See id. at 471, 477–78. The Ninth Circuit in Berman applied the reasoning of Sellers and found that because a textual notice was not reasonably conspicuous and did not explicitly inform users of the terms of the agreement, users could not "be deemed to have manifested assent" to those terms. 30 F.4th at 857–58. The Ninth Circuit applied identical reasoning in an ARL case only a few days ago, holding that a user could not be bound by a sign-in wrap agreement because the website publisher did not provide "reasonably conspicuous notice of the Terms of Use" and the user did not "unambiguously manifest her assent to the Terms of Use." See Chabolla v. Classpass Inc., No. 23-15999, 2025 U.S. App. LEXIS 4591, at *10–11, *25 (9th Cir. Feb. 27, 2025).

The Court applies the Ninth Circuit's objective standard for determining mutual assent. Using this objective inquiry, Whoop's characterization of Requirement 2 as an individualized question fails. Affirmative consent hinges not on what individual users thought, but rather on objective conspicuousness. See Berman, 30 F.4th at 857–58. Plaintiff cites multiple cases in which district courts explicitly deemed affirmative consent to be a common question in ARL class actions.[11] As such, whether Whoop met Requirement 2 is a common question.

---

[11] See Reply at 5 (citing Doe, 2016 U.S. Dist. LEXIS 206880, at *14; Beer v. GoBrands, Inc., No. CV 22-7386 FMO (RAOx), 2024 U.S. Dist. LEXIS 93502, at *14 (C.D. Cal. Jan. 3, 2024); Kissel v. Code 42 Software, Inc., No. SACV 15-1936-JLS (KES), 2017 U.S. Dist. LEXIS 223526, at *11–12 (C.D. Cal. Oct. 4, 2017)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.    Requirement 3

Whoop does not address Requirement 3 in its opposition.

Plaintiff argues that whether Whoop satisfied Requirement 3 is a common question because the allegedly deficient "content" of the disclosures "was materially the same classwide." Reply at 1. Plaintiff contends that, at all points in the relevant period, the disclosures themselves did not "clearly and conspicuously disclose that Whoop Memberships continue until the consumer cancels," "accurately or fully describe the cancellation policy," "disclose what the recurring charges that will be charged will be, or that that amount may change," or "clearly disclose what the length of the automatic renewal term will be." Mot. at 10. So, Plaintiff asserts, all class members were "exposed to the same material omissions," and the determination of whether Whoop satisfied Requirement 3 can be made using classwide information. Id. at 10–11. This, Plaintiff argues, makes it a common question.

Plaintiff's argument is persuasive. Based on Plaintiff's framing of the deficiencies in the pre-purchase disclosures, determining compliance with Requirement 3 cannot be an individualized inquiry. It is a common question that can only be answered using classwide information, because Plaintiff alleges that all class members were "exposed to the same material omissions." Id. Whether Whoop satisfied Requirement 3 is a common question.

### d.    Requirement 4

Whoop does not address Requirement 4 in its opposition.

Plaintiff argues that Whoop's post-purchase acknowledgement was insufficient at all times, failing to satisfy Requirement 4. Id. at 11. The acknowledgement did not include required terms, according to Plaintiff, and did not provide "clear and conspicuous

notice." Id.  Plaintiff notes that the post-purchase acknowledgement ████████

███████████████████. Id.; id. Ex. 3 (Giacalone Dep.) at 160:19–161:6

(██████████████████████████).

Whoop does not argue that individual questions predominate in evaluating

Requirement 4.  Plaintiff asserts that, classwide, the content of Whoop's post-purchase

acknowledgements was deficient.  Reply at 1.  Determining compliance with Requirement

4 is therefore a common question.

## 2.    Article III Standing

Whoop argues that Plaintiff must rely on individualized inquiries to establish

Article III standing, which makes it an individual question.  Opp'n at 8.  To

demonstrate Article III standing, a plaintiff must establish (1) that she has suffered an

injury-in-fact, (2) that her injury is "fairly traceable" to a defendant's conduct, and (3) that

her injury would likely be "redressed by a favorable decision."  Lujan v. Defs. of Wildlife,

504 U.S. 555, 560–61 (1992).  The Ninth Circuit has recognized that "to the extent that

class members were relieved of their money" because of a defendant's wrongful conduct,

"they have suffered an injury-in-fact sufficient to establish Article III standing."  See

Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012) (citations omitted),

overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods

LLC, 31 F.4th 651, 682 n.32 (9th Cir. 2022).

Whoop argues that determining Article III standing for each class member would

require individual inquiries.  Opp'n at 8.  Whoop cites to Sanderson's deposition, in which

he answered affirmatively when asked whether in "considering his own damages," he is

"taking into account [his] own expectation and what [he] knew at the time that [he] signed

United States District Court
Northern District of California

up for the Whoop Membership." Id. at 14 (citing Suehiro Decl., Ex. D (Sanderson Dep.) at 206:7–11). When Sanderson was asked whether other class members would consider their personal expectations when evaluating their damages, he responded: "I cannot speak to their expectations or what we have to do." Id. (citing Suehiro Decl., Ex. D (Sanderson Dep.) at 206:12–17). Extrapolating from this exchange, Whoop posits that Sanderson "does not know if his fellow class members were harmed" and characterizes his responses as indicating that Plaintiff's theory of injury "depends on [class members'] expectations and assumptions." Id. This is Whoop's only argument as to why individualized inquiries predominate in evaluating injury-in-fact sufficient for Article III standing.

Plaintiff contends that it can establish Article III standing for each class member using Whoop's own transactional data, which is a source of classwide proof. Reply at 7. Plaintiff posits that "class members were relieved of the money they paid for their renewals" because Whoop "enrolled them in automatically-renewing Whoop Memberships—and then charged them for renewals—in violation of the ARL." Id. So, Plaintiff theorizes, class members suffered economic injury in the form of wrongfully charged membership costs. Id. A favorable judgment, Plaintiff asserts, will likely redress this injury in the form of refunds for wrongful auto-renewals. Id. Plaintiff also cites a Ninth Circuit case in which a plaintiff had Article III standing where he was charged for auto-renewal of a membership without being provided ARL-required disclosures. See Mot. at 16 (citing Johnson v. Pluralsight, LLC, 728 F. App'x 674, 676 (9th Cir. 2018)).

Plaintiff's argument prevails. Johnson indicates that if the allegations in the complaint are true, all class members have injuries-in-fact sufficient to confer Article III standing. See 728 F. App'x at 676 (finding that where the defendant violated the ARL, it

"was not entitled to charge customers" for its subscriptions, so the plaintiff had Article III standing because he experienced monetary harm through "unlawfully retained subscriptions payments"). Moreover, as Plaintiff notes, Plaintiff can use Whoop's own log of transactional data to prove this injury. Mot. at 14. Sanderson's belief about his own expectations at the time of purchase does not supersede Ninth Circuit precedent. This is a common question that predominates over any individual questions. It can be answered using common, classwide proof.

### 3.    Damages Calculations

Whoop argues that Plaintiff must rely on individualized inquiries to calculate damages, which makes damages an individual question. Opp'n at 8. Whoop asserts that Plaintiff's damages model improperly assumes that class members would not have signed up for memberships if Whoop's allegedly wrongful disclosures were instead ARL-compliant. Id. Whoop's main point is that Plaintiff cannot prove, with classwide evidence, that class members would not have renewed their memberships "but for" the allegedly wrongful auto-renewals. Id. Whoop notes that Sanderson used his Whoop Membership during the auto-renewal period, and only stopped using it because the device stopped working. Id. at 15–16. This, Whoop contends, is proof that Sanderson derived some value from his membership, which should be subtracted from the full autorenewal charges in calculating damages. See id. at 16. In making this argument, Whoop cites excerpts from Sanderson's deposition that appear to indicate that he viewed the disclosure at the time of purchase and decided not to cancel his membership even though he knew he would be auto-renewed. Id. Whoop implies that, because other class members used their memberships during auto-renewal periods, the consideration of offsetting benefits makes

24

the calculation of damages an individual question.[12]  Id. at 16–17.  Finally, Whoop

disputes Plaintiff's assumption that if users did not use the Whoop app, it was because they

did not want to be auto-renewed.  Id. at 15.

Plaintiff notes that it is undisputed that the proposed model measures damages

classwide.[13]  See Reply at 10.  Plaintiff also argues that the proposed model measures

damages that stem directly from Whoop's ARL violations, so "individual damages issues

do not defeat predominance" and "Comcast is satisfied."  Id. at 9–10.  Plaintiff maintains

that ARL liability does not depend on what a website user thought, saw, or wanted, but

instead depends on whether a website publisher complied with the requirements of the law.

Id. at 10.  Plaintiff centers much of its argument around the "unconditional gifts" provision

of the ARL, which states that if a business violates the ARL, that business transforms its

membership product into an "unconditional gift" for which it is "not entitled to charge

consumers."  See id.; Johnson, 728 F. App'x at 675–76; Cal. Bus. & Prof. Code § 17603.

Plaintiff asserts that in violating the ARL, Whoop transformed its Whoop Memberships

into unconditional gifts, and therefore Whoop unlawfully obtained any payment it received

from its subscribers for auto-renewed memberships.  Mot. at 16.  As such, Plaintiff's

damages model seeks to refund class members the amounts of money for which they were

---

[12] Whoop cites a case in which a plaintiffs' full refund model did not account for the value of benefits derived, so the model could not "accurately measure classwide damages."  See Opp'n at 17 (citing In re POM Wonderful LLC, No. ML 10–02199 DDP (RZx), 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014)).

[13] Plaintiff's proposed damages model seeks to recover full refunds for auto-renewed memberships.  Mot. at 15.  This model does not include refunds for the initial membership period purchased by class members, and Plaintiff does not seek a recovery of those membership costs.  Judge Kim addressed this issue in resolving an earlier discovery dispute, holding that "information about the value of the initial term of membership is not relevant."  Order on Disc. Dispute 39 (dkt. 41).

United States District Court
Northern District of California

unlawfully charged. Reply at 10. Plaintiff also argues that class members' ongoing use of their Whoop devices does not relate to predominance or class certification. Id. at 11. Plaintiff contends that the Court need not offset class members' recovery by the value of their ongoing use, but that even if it did, the Court could calculate prorated refunds using classwide data provided by Whoop. Mot. at 16–17.

Whoop's arguments are unconvincing. Even if Sanderson or other class members did use their Whoop Memberships throughout the auto-renewal periods, and even if they did cancel their memberships for reasons unrelated to the auto-renewals, this does not mean that these customers wanted to be auto-renewed. Nor would class members' reasons for using or cancelling their memberships affect whether Whoop violated the ARL when it auto-renewed them.[14] As the Ninth Circuit recognized in Johnson, monetary harm can derive from ARL violations that "transform subscriptions into unconditional gifts pursuant to section 17603" of the California Business and Professions Code, gifts for which businesses are "not entitled to charge consumers." See 728 F. App'x at 675–76; see also Roz v. Nestle Waters N. Am., Inc., 2:16-cv-04418-SVW-JEM, 2017 U.S. Dist. LEXIS 5177, at *24 (C.D. Cal. Jan. 11, 2017) ("When the Defendant collected money from the Plaintiffs that it was not owed by charging their debit or credit cards, the Plaintiffs were undoubtedly injured and lost money as the result of the Defendant's actions. Being forced to pay money for what should be considered a gift must qualify as an injury.").

---

[14] This is relevant for certifying both Plaintiff's proposed class and its "No Use Autorenewal" subclass. Whoop argues in a single footnote that the subclass cannot be certified because in order to determine why users did not use their memberships, the Court would need to consider "individual issues," defeating predominance. Opp'n at 17, n.14. But as discussed here, Whoop's liability for violating the ARL does not depend on why users did or did not use their Whoop Memberships.

As discussed earlier in this order, the violation itself, rather than an individual user's expectation, results in damage. See supra Part III(b)(i)(1)(b). It follows that the calculation of damages can depend on the fact of the violation; what the user might have actually wanted does not matter. See Roz, 2017 U.S. Dist. LEXIS 5177, at *23–24 ("The clear meaning of this provision is that when a business violates the requirements of [the ARL] . . . that consumer has no obligation to pay the business for the product because it is deemed a gift . . . The statute specifically places no conditions on these gifts, meaning that the product is considered a gift whether or not the Plaintiffs can show they did not actually want the product."). Moreover, a full refund damages model cannot create individual questions because it applies across the entire class, regardless of individual circumstances. See Leanne Tan v. Quick Box, LLC, 20cv1082-LL-DDL, 2024 U.S. Dist. LEXIS 6935, at *44 (S.D. Cal. Jan. 12, 2024) ("Plaintiff shows that damages can be determined without excessive difficulty and that each model stems from her theory of liability, which is sufficient at this stage to establish that common questions predominate.").

To the extent that the recovery of damages might depend on the calculation of offsetting benefits, such that any value derived from use of a Whoop Membership would be subtracted from the full membership cost, using Whoop's data to do so (as Plaintiff suggests) would mitigate any predominance issues.[15,16] Whoop's internal data contains

---

[15] Whoop argues that Plaintiff cannot seek a full refund of membership costs for those class members who derived some tangible benefit from use of their membership during autorenewal periods. Opp'n at 16. This might be true, but only for claims under the UCL. See Robinson v. OnStar, LLC, No.: 15-CV-1731 JLS (MSB), 2020 U.S. Dist. LEXIS 10797, at *72 (S.D. Cal. Jan. 22, 2020) (rejecting a full refund damages model in a UCL case).

[16] The "No Use Autorenewal" subclass members did not use their memberships, so offsetting benefits need not be calculated for them at all. See Mot. at 6. Calculating

information on all class members' use of their Whoop Memberships during the autorenewal periods.  See Opp'n at 16.  This is a source of classwide evidence; individual inquiries do not predominate over this common inquiry.  The predominance requirement, and in particular the Comcast damages standard, helps avoid throwing the Court into a series of "individualized mini-trials to determine each class member's damage award."  See Olean, 31 F.4th at 682 n.31.  Using a common batch of data to conduct these inquiries, rather than conducting individual discovery into each class member's offsetting benefits, would avoid "individualized mini-trials."  See id.[17]  Whoop does not identify any cases in which a plaintiff sought a full refund because of an ARL violation, and that damages model defeated predominance.  Nor is it clear why the use of classwide proof from Whoop's own data would constitute an individual question sufficient to undermine predominance, especially when the CLRA permits class members to recover a full refund.[18]  Moreover, the Ninth Circuit has held that "the need for individual damages calculations does not, alone, defeat class certification," and that "[d]amages issues

---

damages for the subclass would not threaten predominance.

[17] The Ninth Circuit has held that "[u]ncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages," and "[t]he fact that the amount of damage . . . may be uncertain, contingent or difficult of ascertainment does not bar recovery."  See Lambert v. Nutraceutical Corp., 870 F.3d 1170, 1182 (9th Cir. 2017) (citations omitted), rev'd on other grounds, 586 U.S. 188 (2019).  It also noted that "[c]lass wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving."  Id. at 1183.

[18] Plaintiff notes that on the CLRA claim, it "can seek actual damages, instead of restitution, which does not require Plaintiff to account for value received."  Mot. at 15; see Amavizca v. Nutra Mfg., LLC, 8:20-cv-01324-RGK-MAA, 2021 U.S. Dist. LEXIS 36009, at *33–34 (C.D. Cal. Jan. 27, 2021) (holding that damages under the CLRA could be calculated classwide, which was sufficient to meet the predominance requirement under Rule 23(b)(3)); see also Zeller, 2024 U.S. Dist. LEXIS 51882, at *22–23 (S.D. Cal. Mar. 14, 2024) ("Section 17603 states that Plaintiffs shall not be liable for qualifying unconditional gifts," which "permits Plaintiffs to seek a full refund in the form of damages through their CLRA claim.") (internal quotation marks omitted).

predominate only where a plaintiff cannot prove that damages resulted from the defendant's conduct." Vaquero v. Ashley Furniture Indus., 824 F.3d 1150, 1154–55 (9th Cir. 2016).

In sum, Whoop's predominance arguments about Plaintiff's damages model are: (1) that calculating damages for each class member is an individual question that threatens to overwhelm common questions; and (2) that the full refund model is not capable of classwide damages measurement. Opp'n at 15. But Whoop does not adequately support those arguments with case law. And, even if damages calculations were individualized, this does not overwhelm common questions with individualized inquiries. See Vaquero, 824 F.3d at 1155.

Having considered Whoop's arguments with respect to ARL compliance, Article III standing, and damages calculations, common questions will predominate over individual questions for both the proposed class and the proposed subclass. Plaintiff has satisfied predominance.

### ii.  Commonality

Under the second Rule 23(a)(2) factor, plaintiffs must show the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality inquiry is less demanding than the predominance inquiry. See DZ Rsrv. v. Meta Platforms, Inc., 96 F.4th 1223, 1233 (9th Cir. 2024) (citing Amchem, 521 U.S. at 624). Commonality is satisfied where claims "depend upon a common contention . . . capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 564 U.S. at 350. "All that Rule 23(a)(2) requires is 'a single significant question of law or

fact.'" <u>Abdullah v. U.S. Sec. Assocs., Inc.</u>, 731 F.3d 952, 957 (9th Cir. 2013) (quoting <u>Mazza</u>, 666 F.3d at 589).

As noted earlier, the parties' predominance arguments completely overlap with their commonality arguments. Though the standards for each requirement are different, in order for common questions to predominate over individual questions, common questions must exist. The Court has already determined that predominance is satisfied. Accordingly, Plaintiff has satisfied commonality for both the proposed class and the proposed subclass.

Because common questions predominate over individual questions, in looking for one "significant" common question sufficient to satisfy commonality, the parties can take their pick. <u>See id.</u> Were the published disclosures "clear and conspicuous" and "in visual proximity" to the request for consent, satisfying Requirement 1 of the ARL? <u>See</u> Cal. Bus. & Prof. Code § 17601(a)(3). Based on a reasonable user inquiry, did class members give affirmative consent, satisfying Requirement 2? <u>See id.</u> § 17602(a)(4). Did the published disclosures include the required "automatic renewal offer terms," satisfying Requirement 3? <u>See id.</u> § 17601(2). Was the content of the post-purchase acknowledgements adequate, satisfying Requirement 4? <u>See id.</u> Were all class members injured? <u>See supra</u> Part III(b)(i)(2). Any will do.

### c. Rule 23(b)(3) Superiority

Under the second Rule 23(b)(3) requirement, plaintiffs must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A court must consider Rule 23(b)(3)'s four factors. <u>See</u> <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1190 (9th Cir. 2001). These factors are: "(a) the class members' interests in individually controlling the prosecution or defense of separate

30

actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citing Zinser, 253 F.3d at 1189).

Whoop does not mention the superiority requirement at all, mentioning only that the allegedly high number of "individualized issues . . . render class treatment an inferior method of adjudicating Plaintiff's claims." Opp'n at 12. Whoop provides no support for this point other than its predominance arguments.

Plaintiff notes that the monetary value of individual claims is small, such that class members have no "significant interest in pursuing individual litigation." Mot. at 17 (citing Lilly v. Jamba Juice Co., 308 F.R.D. 231, 241 (N.D. Cal. 2014)). Plaintiff also argues that there is no "already-commenced litigation concerning the controversy," "economies of scale make it desirable to concentrate the claims of these . . . class members in this . . . forum" because Whoop is based here, and there are "no likely difficulties in managing this case as a class action." Id.

Because this order has already determined that individual issues do not predominate, Whoop's superiority argument, based on its theory of a lack of predominance, also fails. Moreover, all of the 23(b)(3) superiority requirements are met in this case: individual recovery "would be dwarfed by the cost of litigating on an individual basis," meaning that class members do not have an interest in individually controlling

prosecution of this action.  See Wolin, 617 F.3d at 1175 (internal citations omitted).  There

is no preexisting litigation on the matter involving class members.  Mot. at 17.  It is

desirable to concentrate these claims in the forum where Whoop resides.  Id.  Finally, as

previously discussed, Whoop's "individualized inquiries" argument is not convincing

evidence that there would be "difficulties in managing" this case as a class action.  Opp'n

at 12; Fed. R. Civ. P. 23(b)(3)(D).  Plaintiff has satisfied superiority for both the proposed

class and the proposed subclass.

Because Plaintiff has satisfied all of the 23(b)(3) requirements, the Court GRANTS

the motion to certify Plaintiff's proposed class and proposed subclass under 23(b)(3).

### d.    23(b)(2) Injunction Class Certification

Plaintiff also seeks to certify a class under Rule 23(b)(2).  Mot. at 17–18.  Rule

23(b)(2) permits class certification where "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R.

Civ. P. 23(b)(2).  "[I]t does not authorize class certification when each class member

would be entitled to an individualized award of monetary damages" and where "the

monetary relief is not incidental to the injunctive or declaratory relief."  Wal-Mart, 564

U.S. at 360–61.

The Court declines to certify the class under Rule 23(b)(2) because Plaintiff's

primary form of requested relief is monetary.  See Fed. R. Civ. P. 23(b)(2) advisory

committee's notes to 1966 amendment ("The subdivision does not extend to cases in

which the appropriate final relief relates exclusively or predominantly to money

damages.").  "Class certification under Rule 23(b)(2) is appropriate only where the primary

relief sought is declaratory or injunctive." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 986 (9th Cir. 2011) (citing <u>Zinser</u>, 253 F.3d at 1195). This is because 23(b)(3) class members "are afforded the right to be notified of the action and to opt out of the class," but 23(b)(2) class members have no opportunity to opt out. <u>Id.</u> at 987 (citing <u>Wal-Mart</u>, 564 U.S. at 362). "The absence of these protections in a class action predominantly for monetary damages violates due process." <u>Id.</u> (citing <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812 (1985)).

Plaintiff spends the majority of its motion discussing why appropriate relief should consist of money damages via full refunds for auto-renewed subscriptions. <u>See</u> Mot. at 5–17 (discussing in twelve pages why this Court should certify a damages class), 17–18 (discussing in two paragraphs why this Court should certify an injunction class). The primary form of relief Plaintiff seeks is monetary damages. As such, Ninth Circuit law prohibits 23(b)(2) certification. <u>See Ellis</u>, 657 F.3d at 986.

Accordingly, the Court DENIES Plaintiff's motion to certify a class under 23(b)(2).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for 23(b)(3) certification, CERTIFIES Plaintiff's proposed 23(b)(3) class and subclass, APPOINTS Dovel & Luner as class counsel, and APPOINTS Donrick Sanderson as class representative. The Court DENIES the motion for 23(b)(2) certification.

**IT IS SO ORDERED.**

Dated: March <u>7</u>, 2025

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California