UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONRICK SANDERSON,

          Plaintiff,

     v.

WHOOP, INC.,

          Defendant.

Case No. 23-cv-05477-CRB

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Docket Nos. 97, 99

## I.    INTRODUCTION

This is a certified class action arising from alleged violations of California state consumer protection laws.  Plaintiff Donrick Sanderson alleges that Whoop, Inc. ("Whoop") violated California's Automatic Renewal Law ("ARL") and, through said violations, deceived consumers and illegally charged them for continually-renewing memberships.

Plaintiff and Defendant filed cross-motions for summary judgment.  The Court **DENIES** Plaintiff's motion and **GRANTS IN PART AND DENIES IN PART** Defendant's motion.  Specifically, the Court **DISMISSES WITHOUT PREJUDICE** to refiling in state court Plaintiff's UCL and FAL claims in their entirety, and Plaintiff's CLRA claim to the extent it seeks equitable restitution and injunctive relief, for lack of equitable jurisdiction.  The Court **DENIES** summary judgment as to both parties on the remaining CLRA damages claim, which may proceed to trial.

## II.    BACKGROUND

A.    Factual Background

Plaintiff alleges that Whoop sold him an auto-renewing membership without

properly disclosing the terms of the auto-renewal deal both before and after purchase. See Second Amended Complaint ("SAC") (Dkt. 42). California's ARL prohibits companies from enrolling consumers in auto-renewing memberships without making "clear and conspicuous" disclosures of specific "automatic renewal offer terms" "in visual proximity . . . to the request for consent to the offer." Cal. Bus. & Prof. Code §§ 17601(a)(2), 17602(a)(1).

Whoop sells wearable fitness trackers and a subscription-based membership that allows users to access associated tracking software. SAC ¶ 3. Regardless of whether users initially sign up for an "Annual Membership," a "24 Month Membership," or a "1 Month Free Trial," Whoop automatically enrolls users in a new Annual Membership billed on an auto-renewing basis at the end of the user's initial membership period. See id. ¶¶ 27–28. Plaintiff alleges that Whoop's pre-purchase disclosures violated the ARL because they did not include required terms and were not presented in a "clear and conspicuous" way. Id. ¶ 29. Plaintiff also alleges that Whoop violated the ARL by failing to give adequate post-purchase acknowledgements, also required by California's ARL. Id. ¶ 57.

Plaintiff Sanderson alleges that he purchased a Whoop membership in April 2021 and that Whoop automatically renewed that membership twice, without his knowledge or consent.[1] Id. ¶¶ 63–71. Sanderson continued uploading data from his Whoop device until April 23, 2023 — roughly a year after the first automatic renewal. Whoop Ex. 15. On July 21, 2023, Sanderson contacted Whoop's membership services team, stating that his "biggest concern that caused [him] to cancel" was that his Whoop devices no longer held sufficient charge and were no longer usable. Whoop Ex. 21. During that conversation with a membership services team member, Sanderson never raised any issue regarding auto-renewal itself. See id. Sanderson finally canceled his membership on June 6, 2024, avoiding a third automatic renewal. See McGahee Expert Report at 10 n.32 ("I understand that although Sanderson scheduled the cancellation of his Whoop membership on June 6,

---

[1] Sanderson's Whoop membership automatically renewed for the first time in June 2022 for $288.00, and for the second time in June 2023 for $239.00. SAC ¶ 65.

United States District Court
Northern District of California

2024, he was still able to use all features associated with his membership until June 22, 2024, one year after his second autorenewal payment.").

Plaintiff alleges that he "faces an imminent threat of future harm. He likes the Whoop service and would buy a (limited term, non-renewing) subscription again" if he were certain that Whoop would not auto-renew his membership again. SAC ¶ 72. Without an injunction, however, Sanderson alleges that he cannot trust Whoop to comply with the ARL. Id. Sanderson testified at his deposition that he would not have purchased a membership, had the auto-renewal policy been "clearly . . . visible, articulated, defined," and that he did not learn that the membership had been auto-renewed until after the second renewal had already occurred. Sanderson Dep. at 134:4–13, 192:4–15.

B.     Procedural History

The operative SAC asserts three causes of action arising from the same alleged ARL noncompliance: violation of the False Advertising Law ("FAL") (Cause of Action 1), violation of the Unfair Competition Law ("UCL") (Cause of Action 2), and violation of the Consumers Legal Remedies Act ("CLRA") (Cause of Action 3). SAC ¶¶ 80–118. Critically for the summary judgment motions, the FAL and UCL claims seek restitution and injunctive relief, and the CLRA claim seeks damages and, as originally pled, equitable relief as well.[2] The ARL itself affords no private right of action, so each cause of action proceeds as a vehicle for ARL-based liability.

In early-2025, the Court certified a class of "[a]ll persons in California who purchased a Whoop Membership through the Whoop website, were enrolled in [Whoop's] automatically renewing Whoop Membership subscription, and were automatically renewed and charged for at least one renewal term after their initial membership or commitment period ended, during the applicable statute of limitations." Order Certifying Class (Dkt. 63) at 2–3, 33. The Court also certified a subclass of "[a]ll members of the Class who

---

[2] As discussed in further detail below, Plaintiff now stipulates that he "does not oppose dismissal of his claims for equitable relief . . . under the CLRA (as to equitable restitution only), and his request for injunctive relief, without prejudice to refiling in state court." Sanderson Opp. to MSJ at 5 n.1.

were automatically renewed and charged for at least one renewal term that they did not use." Id. at 3, 33.  The Court denied certification of an injunctive-relief class under Federal Rule of Civil Procedure 23(b)(2), finding that "Plaintiff's primary form of requested relief is monetary." Id. at 32–33.

C.    Whoop Disclosures and Plaintiff's Membership History

Whoop's membership checkout flow has used substantially the same structure since 2019: a consumer selects a membership option, enters payment information, and clicks a "Place Order" button.  The ARL disclaimer only appears *beneath* the "Place Order" button, and states:

> By placing an order, you agree to the WHOOP Terms of Use and Privacy Policy.  You authorize WHOOP to charge your credit card annually each time your membership automatically renews.  Your membership begins once you connect the Whoop 4.0 or 1-month from the shipment date.  You may cancel at any time.

Sanderson Ex. 4; see also Sanderson Ex. 6 (summarizing checkout page disclaimers from 2019 through 2024); Sanderson Ex. 7 (same).

With respect to how the disclaimer appears, the text is displayed as a three-line text block, in gray font on a white background.  Sanderson Ex. 4.  The words "Terms of Use" and "Privacy Policy" appear in blue hyperlink format, but the rest of the block is in gray. Id.  This overall layout has remained materially consistent between 2019 and 2024.  See Giacalone deposition at 94:23–25, 95:14–96:2, 394:18–20 (general layout of checkout page and appearance of auto-renewal disclaimer has stayed materially the same from 2019 through 2024).

Under California law, auto-renewal disclosures must be "clear and conspicuous." Bus. & Prof. Code § 17602(a)(1).  The ARL defines "clear and conspicuous" as "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Id. § 17601(a)(3). Plaintiff contends that the disclosure satisfies none of these requirements.  As to font size,

Nate Giacalone, Whoop's 30(b)(6) designee, admitted that the auto-renewal disclaimer is the smallest text on the page, with the possible exception of a bolded and underlined "Have a promo code?" prompt that appears on the opposite side of the page. Giacalone Dep. at 103:20–105:7; see also Sanderson Ex. 4. As to the second requirement of contrasting type, font, or color to surrounding text of the same size, there is no surrounding text of the same size. Id. In any event, the disclaimer was not bolded, underlined, or otherwise emphasized relative to the other text on the page. Id. Finally, with respect to the third requirement of being set off by symbols or marks, Whoop's 30(b)(6) designee also testified that, during the relevant period, there were "never boxes nor symbols around" the disclaimer. Giacalone Dep. at 106:12–17. Whoop disputes these characterizations of the disclaimer, arguing that the gray-on-white disclaimer is "arguably *more* prominent by being in gray on a white background with the eye-catching blue links." Whoop Opp. to MSJ (Dkt. 111-1) at 14 (emphasis in original).

Beyond the visual presentation, the substance of the auto-renewal disclosure is also contested. Sanderson identifies numerous categories of required information that the checkout page text either omitted or affirmatively misstated.

*First*, the auto-renewal disclaimer does not state that the subscription "will continue until the consumer cancels," as § 17601(a)(2)(A) requires. Sanderson MSJ (Dkt. 98-2) at 3; see also Sanderson Ex. 4. Instead, the disclosure states that Whoop will charge the user "each time your membership automatically renews," without specifying how many times that will occur or that the obligation may be indefinite. See Sanderson Ex. 4; see also Sanderson Ex. 7 (showing continuity of disclosure text between 2019 and 2024).

*Second*, the disclaimer states "You may cancel at any time," which Sanderson argues is a false representation. Sanderson MSJ at 10. Under Whoop's own policies, a member who cancels mid-term is not actually released from their current billing period, and the subscription continues through the end of their membership term with no prorated refund. Giacalone Dep. at 117:8–24, 171:16–19, 426:19–427:8, 428:24–429:2, 429:18–20. Members must also give notice of cancellation *before* the autorenewal date, though the

United States District Court
Northern District of California

United States District Court
Northern District of California

disclaimer does not announce any such deadline. Id. at 171:13–19.

*Third*, the disclaimer does not identify the recurring charge amount or disclose that the amount may change between billing cycles. Sanderson MSJ at 10–11; Sanderson Ex. 4. Instead, the disclosure says that Whoop will charge the card "annually each time your membership automatically renews." Sanderson Ex. 4. The disclosure does not specify a dollar figure or warn that the amount charged upon renewal may differ from the amount paid when the user first signed up for Whoop's service. See id.; Giacalone Dep. at 109:7–15 (admitting that disclaimer does not state how much the user will be charged for renewal or that the price of renewal may change over time), 406:8–17 (indicating that membership prices changed and that Whoop knew that "subscription fees" may change over time). Section 17601(a)(2)(C) requires disclosure of the recurring charge amount and, if the amount may change over time, a statement to that effect. Bus. & Prof. Code § 17601(a)(2)(C).

*Fourth*, Sanderson argues that the disclosure does not adequately state the length of the renewal term. Sanderson MSJ at 9, 14; see Sanderson Exs. 4, 8 (membership acknowledgement email). The ARL requires disclosure of the "length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer." Bus. & Prof. Code § 17601(a)(2)(D).

*Finally*, Sanderson points out that — although the full automatic renewal terms appear in Whoop's Terms of Use, accessible through a clearly marked hyperlink embedded in the disclaimer — the ARL requires the auto-renewal terms to themselves appear "in visual proximity . . . to the request for consent to the offer." Bus. & Prof. Code § 17602(a)(1); Sanderson MSJ at 9. Sanderson contends that a link to the ARL terms is not sufficient, and that the auto-renewal terms must be on the same page as the checkout-page disclosure and "visually close" on that page. Id. (citing Turnier v. Bed Bath & Beyond Inc., 517 F. Supp. 3d 1132, 1140 (S.D. Cal. 2021) ("But the terms themselves — not the access point to them — need to be in visual proximity to the request.").

Whoop's post-purchase disclosures are also contested. The ARL requires a post-

6

United States District Court
Northern District of California

purchase "acknowledgement" containing the auto-renewal terms, the cancellation policy, and cancellation instructions "in a manner that is capable of being retained by the consumer."  Bus. & Prof. Code § 17602(a)(3).  Before early-2021, Whoop's order confirmation emails contained no ARL disclosure at all.  Giacalone Dep. at 161:22–162:2, 174:4–14.  At some point thereafter, Whoop added an auto-renewal disclosure at the bottom of the order confirmation email stating: "Your membership begins once you connect your strap, or 30 days after shipment.  Your membership will renew automatically.  You may cancel at app.whoop.com."  Sanderson Ex. 8.  Sanderson argues that this disclosure is deficient because it is visually buried at the bottom of the email, it appears in the same size and font as the surrounding text and is not offset or emphasized, and it repeats the same substantive omissions as the checkout page disclaimer (i.e., no disclosure about renewal cost, no information about renewal term length, and lack of prorated refund for mid-subscription cancellations).  Sanderson MSJ at 14–15; Giacalone Dep. at 163:8–19.  Sanderson also points out that the disclosure within the acknowledgement email does not actually direct customers on how to cancel their subscriptions and avoid auto-renewal.  Instead, the subscriber is directed to a generic login page, and then to the user's "dashboard."  Giacalone Dep. at 172:16–20.  From the dashboard, the user must click a link to "see your membership" and from there may click onto a "membership page" and finally cancel their membership from there.  Id. at 172:21–25.

Separately, Sanderson also argues that the thirty-day renewal reminder emails that Whoop sent before each annual renewal do not satisfy the ARL requirements for many of the same reasons as the checkout page disclosure and email acknowledgements preceding and immediately following purchase.  Sanderson MSJ at 16.  For context, Whoop sends renewal reminder emails to members on annual subscription plans, but not those on monthly plans.  Giacalone Dep. at 420:8–20.  Members who are charged by month do not receive advance renewal notice at all, and their post-purchase communication is solely the order confirmation acknowledgement and any number of marketing emails that Whoop sends on a relatively frequent basis.  See id.  For annual members, Whoop sends a

United States District Court
Northern District of California

reminder before each renewal charge is processed.  A reminder email that was sent around the time of one of Sanderson's automatic renewals bears the subject line "Donrick, your membership is about to renew."  See Sanderson Ex. 10; Giacalone Dep. at 423:17–424:4; Whoop Ex. 17.  The email is formatted generally as a marketing message, dominated by a large promotional image with the headline "Renew Today" and "New, Lower Prices," with a prominent red "Renew My Membership" button. Sanderson Ex. 10.  The auto-renewal language appears throughout the email, instead of in one unified text box.  First, below the heading, the text reads "Your membership is coming to an end and will automatically renew in 30 days" and, toward the bottom of the email in smaller font, the text states "You may cancel at any time.  To manage your membership, log in to your account," with "log in" appearing as a hyperlink.  Id.  The body of the email states that the renewal price is $239.00/year + tax" and includes a brief promotional message about a price decrease.  Id.

Sanderson challenges these reminder emails on several grounds, including that the emails omit several categories of information that the ARL requires.  The reminder emails notify members of the upcoming renewal but do not disclose the indefinite nature of the auto-renewal obligation — specifically, that the subscription will continue renewing until the consumer cancels.  Sanderson MSJ at 16.  The emails also state that the user "may cancel at any time," without disclosing that cancellation mid-term does not afford the user a prorated refund, and that the user must provide notice before the renewal date to avoid a further charge.  Id.; Giacalone Dep. at 117:8–24, 171:13–19, 426:19–427:8.  Sanderson also argues that the cancellation instruction is inadequate for the same reasons that the parallel instruction in the order confirmation email is inadequate.  The instruction directs members only to a login page, but several additional steps are required before users can access a cancellation option.  Whoop responds that the combination of checkout disclosures, order confirmations, and renewal reminders in conjunction with each other "fulfill the [ARL's] central purpose," and that summary judgment against it is precluded at minimum by disputes of fact about the adequacy and good-faith nature of the overall disclosure scheme.  Whoop MSJ at 17–23 (quoting Roz v. Nestle Waters N. Am., Inc.,

8

2017 WL 6942661, at *3 (C.D. Cal. Dec. 6, 2017)).

D.    Governing Legal Framework

    1.    Automatic Renewal Law

California's ARL, Cal. Bus. & Prof. Code §§ 17600–17606, requires a business that offers an automatically renewing subscription to (1) present the automatic renewal offer terms — specifically that the subscription continues until canceled, the cancellation policy, the recurring charge, and the length of the renewal term — in a "clear and conspicuous manner" and "in visual proximity . . . to the request for consent to the offer; (2) obtain the consumer's "affirmative consent" to those terms before charging the consumer for automatic renewal; and send an acknowledgement containing the same offer terms, the cancellation policy, and cancellation instructions. Cal. Bus. & Prof. Code §§ 17601–17602. "Clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Id. § 17601(a)(3). A business that "complies with the provisions of this article in good faith" is not subject to civil remedies for certain violations. Id. § 17604(b).

The ARL does not itself create a private right of action, and a plaintiff must instead proceed under another statute that does. Johnson v. Pluralsight, LLC, 728 F. App'x 674, 676 (9th Cir. 2018) (mem.). Sanderson thus proceeds under the FAL, UCL, and CLRA, each treating Whoop's alleged ARL noncompliance as the predicate wrong.

    2.    Unfair Competition Law

The UCL, Cal. Bus. & Prof. Code § 17200, prohibits "any unlawful . . . business act or practice." "The UCL provides only for equitable remedies." Guzman v. Polaris Indus. Inc., 49 F.4th 1308, 1313 (9th Cir. 2022) (internal quotation marks and brackets omitted) (quoting Hodge v. Super. Ct., 145 Cal. App. 4th 278, 284 (Cal. Ct. App. 2006)).

    3.    False Advertising Law

The FAL, Cal. Bus. & Prof. Code § 17500, prohibits untrue or misleading

9

statements made with the intent to dispose of goods or services, where the speaker knew or reasonably should have known the statement was misleading, and is governed by a reasonable consumer standard.  Standing again runs only to the class representative.  Cal. Bus. & Prof. Code § 17535.  The FAL, like the UCL, allows only for equitable relief.

### 4. Consumers Legal Remedies Act

The CLRA, Cal. Civ. Code § 1750, *et seq.*, prohibits specified "unfair methods of competition and unfair or deceptive acts or practices" in consumer transactions.  Cal. Civ. Code § 1770(a).  Sanderson's CLRA claim "is based on the theory that Whoop misled consumers by misrepresenting the nature of goods or services."  Sanderson Opp. to MSJ (Dkt. 108-2) at 6.  Specifically, Sanderson proceeds under two subdivisions: § 1770(a)(5), which prohibits representing that goods or services have characteristics that they do not have, and § 1770(a)(9), which prohibits advertising goods or services with intent not to sell them as advertised.  Both subdivisions reach ARL-related misrepresentations and omissions.  See Zeller v. Optavia LLC, 2024 WL 1207461, at *5 (S.D. Cal. Mar. 14, 2024) (collecting ARL cases applying both subdivisions).

To prevail on Plaintiff's CLRA claim, he must establish: (1) a misrepresentation or actionable omission within the scope of § 1770(a); (2) that the misrepresentation or omission was material, in the sense that a reasonable consumer would have considered it important in making purchasing decisions; (3) actual reliance, or that the misrepresentation was an immediate cause of the injury; and (4) resulting damage.  Cal. Civ. Code § 1780(a); see Valentine v. Crocs, Inc., 783 F. Supp. 3d 1204, 1215 (N.D. Cal. 2025); Zeller, 2024 WL 1207461, at *5; In re Vioxx Class Cases, 180 Cal. App. 4th 116, 129 (Cal. Ct. App. 2009).  In the class certification context, the Ninth Circuit has held that proof of a material misrepresentation made to the class as a whole can give rise to an inference of class-wide reliance.  Noohi v. Johnson & Johnson Consumer Inc., 146 F.4th 854, 868 (9th Cir. 2025) ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.").  Noohi and related cases do not disturb the requirement that the class representative must demonstrate actual reliance, however.  See

United States District Court
Northern District of California

Valentine, 783 F. Supp. 3d at 1215–16.

A CLRA claim may rest on a failure to disclose rather than an affirmative misrepresentation, but only where the defendant had an obligation to disclose the omitted fact.  Gray v. Dignity Health, 70 Cal. App. 5th 225, 243 (Cal. Ct. App. 2021).  That obligation arises, among other circumstances, where the defendant violated a statutorily-imposed duty to disclose.  See Zeller, 2024 WL 1207461, at *6–7.

Most importantly for this action, the CLRA authorizes actual damages, as well as equitable restitution.  Cal. Civ. Code §§ 1780(a)(1), (a)(3).  The availability of the legal remedy, and how it relates to the UCL and FAL claims for equitable restitution, is the subject of the equitable jurisdiction analysis below.

### III.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, [as is the case here,] the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do

11

not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

When the parties file cross-motions for summary judgment, the court must consider all the evidence submitted in support of the motions to evaluate whether a genuine dispute of material fact exists precluding summary judgment for either party. The Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

## IV.    DISCUSSION

Sanderson moves for summary judgment on the grounds that Whoop violated the ARL as a matter of law, that those violations constitute violations of the UCL, FAL, and CLRA as a matter of law, and that the class is entitled to full refunds in an amount calculated by his damages expert. Sanderson MSJ at 1. Whoop cross-moves on two key grounds: (1) that the Court lacks equitable jurisdiction over the UCL and FAL claims, and the CLRA claim to the extent it seeks equitable relief, because Sanderson has an adequate legal remedy under the CLRA; and (2) that the CLRA damages claim fails as a matter of law because Plaintiffs do not present evidence establishing that Whoop's disclosures could have misled a reasonable consumers, and because no reasonable factfinder could conclude that Sanderson personally relied on those disclosures. Whoop MSJ at 1–2.

The Court **DISMISSES** the UCL and FAL claims for lack of equitable jurisdiction. Because Plaintiff stipulates to dropping the CLRA equitable restitution and injunction claim, and because that claim would be dismissed for lack of equitable jurisdiction regardless, only the CLRA damages claim remains live. The CLRA requires Sanderson to show that a significant portion of reasonable consumers would have been misled by Whoop's disclosures, and that he personally relied on those disclosures in deciding to purchase and maintain his membership. Both of these elements are disputed material facts. Because neither side has demonstrated the absence of a genuine dispute, summary

12

judgment must be **DENIED** as to both parties on the CLRA claim.

A.        Equitable Jurisdiction

The Court lacks equitable jurisdiction over the UCL and FAL claims, which seek only equitable relief.  A federal court sitting in equity may not award equitable relief where the plaintiff has an adequate remedy at law.  Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020).  A legal remedy is "adequate" when it would provide "the same amount of money for the exact same harm" as the equitable remedy sought.  See id.  The Ninth Circuit has made clear that this bar is not avoided merely because the plaintiff's legal claim is uncertain, difficult to prove, or dependent on additional elements not recognized by the equitable claim.  Guzman, 49 F.4th at 1313 (holding that plaintiff's CLRA claim was time-barred and still foreclosed UCL equitable restitution).  And this bar is not avoided after the plaintiff fails to prove their legal claim at summary judgment — in other words, a plaintiff cannot retroactively render an adequate remedy inadequate by losing on the merits.  See Key v. Qualcomm Inc., 129 F.4th 1129, 1142 (9th Cir. 2025).

The appropriate disposition, when equitable jurisdiction is lacking, is dismissal without prejudice to re-filing in state court, rather than summary judgment for the defendant on the merits.  See, e.g., Guzman, 49 F.4th at 1314 ("[A] federal court that dismisses a claim for lack of equitable jurisdiction necessarily declines 'to assume the jurisdiction and decide the cause.' . . . Thus, a federal court's pre-merits determination to withhold relief is binding on other federal courts, but not on courts outside the federal system that might properly exercise their own jurisdiction over the claim.  In accordance with this general rule, the district court should have dismissed Albright's UCL claim without prejudice to refiling the same claim in state court."); Key, 129 F.4th at 1142 (vacating district court's grant of summary judgment on UCL claim and remanding with instruction to dismiss the claim without prejudice to refiling in state court).

Plaintiff does not appear to dispute this characterization, and in fact concedes the absence of equitable jurisdiction over certain claims:

Plaintiff does not oppose dismissal of his claims for equitable

relief under the "deceptive" UCL prong and under the CLRA (as to equitable restitution only), and his request for injunctive relief, without prejudice to refiling in state court.

Sanderson Opp. to MSJ at 5 n.1.

The parties thus dispute only whether the UCL's "unlawful" and "unfair" prongs and the FAL claim may survive alongside the CLRA damages claim.  See id.

The record demonstrates that all three theories seek the same monetary recovery for the same underlying conduct and harm.  Sanderson's cross-motion seeks a full refund of all automatic renewal payments charged to class members — approximately ▇▇ million. Plaintiff's UCL and FAL claims seek restitution for those same renewal payments, and his CLRA claim seeks damages in the same amount.  See Sanderson MSJ at 27 ("Class members are entitled to the full amount that Whoop illegally charged them for automatic renewals.  And that amount is undisputed: ▇▇ million.").

Despite seeking the same general relief, Sanderson contends that the UCL "unlawful" and "unfair" prongs, and the FAL claim, may survive alongside the CLRA because the UCL and FAL claims rest on a "different theory" than the CLRA claim. Sanderson Opp. to MSJ at 5–9. Specifically, Sanderson points out that under the UCL and FAL, liability for violations of the ARL do not require a showing of consumer deception, whereas the CLRA independently requires proof of materiality and actual reliance.  Id. (stating that Plaintiff's UCL and FAL claims "are not grounded in deception; they are predicated on violations of the ARL.  And the ARL's prohibitions do not involve deception. ...... In that way, the ARL is more akin to strict liability while the CLRA is more akin to negligence").  Sanderson relies heavily on a set of district court decisions holding that equitable and legal claims may coexist where they are "rooted in a different theory" of wrongfulness.  See, e.g., Elgindy v. AGA Serv. Co., 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021); Lin v. JPMorgan Chase Bank, N.A., 2024 WL 5182199, at *9 (C.D. Cal. Aug. 15, 2024).  Sanderson's argument relies on the assumption that his legal remedy under the CLRA is less certain because it requires proof of additional elements (materiality and reliance) that are not required to prevail on the UCL and FAL claims.

This doctrine does not apply here.  All three theories rest on the same factual predicate: Whoop's alleged failure to make adequate ARL disclosures at checkout and in its post-purchase communications.  And all three theories seek the same monetary recovery.[3]  Where a plaintiff pursues equitable theories premised on the same conduct and with the goal of recovering the same monetary remedy already available through a legal claim, it is unlikely that the legal remedy is inadequate.  Thus, there is no basis for equitable jurisdiction.  See Sonner, 971 F.3d at 844.

The SAC's own pleading makes the unity between claims even more apparent.  The UCL "unlawfulness" claim alleges simply that "Defendant committed unlawful practices because, as alleged above and incorporated here, it violated California's Automatic Renewal Law."  SAC ¶ 94.  The UCL "unfairness" prong similarly alleges that "Defendant committed 'unfair' acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL."  Id. ¶ 95.  Again, the ARL violation is the predicate wrong.  The FAL claim alleges that Whoop unlawfully "disseminat[ed] misleading advertisements concerning the automatically renewing nature of Whoop Memberships. ....... Defendant's advertising of the Whoop Memberships (and its failure to display ARL compliant disclosures with those advertisements) misleads reasonable consumers about the automatically renewing nature of the plans."  Id. ¶ 84.  And the CLRA claim rests on precisely the same ARL-deficient disclosures and advertising that supposedly "misleads reasonable consumers about the automatically renewing nature of the plans."  Id. ¶ 110.

Far from being rooted in different theories, Plaintiff's legal theories concern the same conduct, injury, and remedy.  Thus, Sanderson's reliance on Elgindy and Lin is misplaced.  In Elgindy, the district court permitted equitable UCL claims to survive because the equitable theory rested on violations of California insurance regulations for which there was no available legal cause of action.  2021 WL 1176535, at *14–15.  The court was careful to explain that, in that particular circumstance, "[o]nly equitable claims

---

[3]  As noted above, Plaintiff disclaims "his request for injunctive relief, without prejudice to refiling in state court."  Sanderson Opp. to MSJ at 5 n.1.

United States District Court
Northern District of California

United States District Court
Northern District of California

are available on Plaintiffs' theory that Defendant's services fee violates California insurance statutes and regulations.  Therefore, Plaintiffs are entitled to pursue equitable relief under this theory." Id. at *15.  Importantly, the Elgindy court in the same decision dismissed the equitable fraud claims, because those claims were "rooted in the same theory and factual allegations" as the plaintiffs' legal fraud claim, and the plaintiffs had not shown that they lacked an adequate remedy at law for the fraud claims.  Id.  The surviving equitable claims in Elgindy were only those for which no legal analog existed.  See id.  It is not enough that claims contain different elements.  Lin applied a similar principle, finding that where equitable and legal claims "depend[] on a theory materially different" from one another, they may in fact coexist.  2024 WL 5182199, at *9.

The circumstances presented here are substantively different from Elgindy and Lin.  Sanderson has a fully viable CLRA legal cause of action premised on the exact same disclosure failures that underlie his UCL and FAL claims.  Not only are the claims in Plaintiff's SAC practically the same, Plaintiff has repeatedly characterized the claims as being unified around the same core conduct.  For example, in his motion for class certification, Plaintiff represented: "Plaintiff brings claims under these three statutes [FAL, UCL, and CLRA].  Each claim is based on Defendant's underlying violation of the ARL." Sanderson Motion for Class Certification (Dkt. 45) at 3–4.  Plaintiff's cross-motion for summary judgment similarly states that "Whoop's violations of the ARL are also violations of the CLRA," further highlighting the material identicality of the claims.  Sanderson advanced a single unified theory of liability throughout the litigation, and he cannot now at summary judgment invoke a "rooted in a different theory" exception to Sonner by re-labeling the same conduct as two separate theories.

Nor are the claims "rooted in a different theory" merely because Plaintiff's CLRA theory requires him to prove additional elements.  The Ninth Circuit held in Guzman that even a time-barred CLRA claim, one that could not possibly succeed, still precluded UCL equitable restitution, because the adequacy of a legal remedy is assessed based on its existence, not its likelihood of success on the merits.  49 F.4th at 1313; see also Key, 129

16

United States District Court
Northern District of California

F.4th at 1142 (holding that plaintiffs' "failure to prove their Cartwright Act claim, however, 'does not make that remedy inadequate.'") (quoting In re Qualcomm Antitrust Litig., 2023 WL 6301063, at *8 (N.D. Cal. Sept. 26, 2023)).  This principle was recently confirmed in this district: "a mere difference in proof between claims does not make the legal remedy inadequate where the claims are rooted in the same theory.  King v. Nat'l General Ins. Co., 2025 WL 2494366, at *8 (N.D. Cal. Aug. 29, 2025) (also interpreting Elgindy as applicable "where the plaintiffs are not able to plead a legal claim on the facts alleged") (emphasis added).   If a plaintiff who has already lost on their legal claim cannot escape Sonner, a plaintiff who *might* lose is in no better position.

Finally, the weight of authority in ARL cases consistently applies Sonner to dismiss UCL and FAL equitable restitution claims where the plaintiff has a parallel CLRA damages claim for the same underlying conduct.  See, e.g., Zeller, 2022 WL 17858032, at *6–7; Weizman v. Talkspace, Inc., 705 F. Supp. 3d 984, 990 (N.D. Cal. 2023); Wu v. iTalk Global Commc'ns, Inc., 2021 WL 5176799, at *3–4 (C.D. Cal. Feb. 2, 2021).  Sanderson has a viable CLRA damages claim — a legal remedy — available for the alleged failure to disclose auto-renewal terms.  Accordingly, Sanderson may not proceed with equitable claims arising under the UCL, FAL, and CLRA.

For the foregoing reasons the Court **DISMISSES** Plaintiff's UCL and FAL claims for lack of equitable jurisdiction **WITHOUT PREJUDICE** to refiling in state court. Plaintiff's claim for equitable restitution and injunctive relief brought under the CLRA is likewise **DISMISSED WITHOUT PREJUDICE** to refiling in state court.

B.     CLRA Claim

Dismissal of the UCL and FAL claims, and the CLRA claim for equitable restitution and injunctive relief, leaves the CLRA damages claim as the sole remaining basis for relief.  Both parties move for summary judgment on the CLRA claim.  Sanderson contends that Whoop's ARL violations establish each element of his CLRA claim as a matter of law.  Sanderson MSJ at 20–23.  Whoop argues that Sanderson has not produced evidence sufficient to survive summary judgment on the reasonable consumer standard or

United States District Court
Northern District of California

actual reliance. Whoop MSJ at 12–16. Both motions fail. Genuine disputes of material fact exist on the elements of misrepresentation or actionable omission, materiality, and actual reliance, and the proper measure of damages remains contested. Because neither side has met its burden on summary judgment, the motions are **DENIED** as to both parties.

To prevail on a CLRA claim, Plaintiff must establish: (1) a misrepresentation or actionable omission within the scope of Cal. Civ. Code § 1770(a); (2) that the alleged misrepresentation or omission was material under the reasonable consumer standard; (3) actual reliance by Plaintiff; and (4) resulting damage. See Cal. Civ. Code § 1780(a); Valentine, 783 F. Supp. 3d at 1215–16; Vioxx, 180 Cal. App. 4th at 129.

1.    Misrepresentation or Actionable Omission

Sanderson's CLRA claim proceeds under two subdivisions of § 1770: § 1770(a)(5), which prohibits representations that goods or services have characteristics that they do not possess, and § 1770(a)(9), which prohibits advertising goods or services with the intent not to sell them as advertised. The record presents genuine disputes of fact as to both theories.

One of the more pointed disputes concerns Whoop's representation to users that they "may cancel at any time," which appears on the checkout page and in renewal reminder emails. See Sanderson Exs. 4, 10. Whoop's own 30(b)(6) designee admitted that a member who cancels mid-term does not receive a prorated refund, and that the subscription simply continues until the end of the existing term. Giacalone Dep. at 117:8–118:5, 171:16–19, 426:19–427:8, 428:24–429:2, 429:18–20. A member must also provide notice of cancellation *before* their upcoming renewal date to avoid a further charge. Id. at 171:13–15. On this record, a reasonable factfinder could conclude that the disclaimer statement, "You may cancel at any time," is not an accurate description of Whoop's actual cancellation policy, and that it misrepresents a characteristic of the subscription service within the meaning of § 1770(a)(5). Whoop responds that "Plaintiff understands that when one cancels a subscription service, they do not get a pro-rated refund for the period already paid for — the cancellation applies at the next renewal date." Whoop Reply iso MSJ (Dkt. 121-1) at 15–16. In light of the disputed evidence in the record, Sanderson's

18

United States District Court
Northern District of California

understanding of the cancellation policy, and that of the broader class, is a dispute for the factfinder.

Relatedly, Plaintiff challenges the adequacy of Whoop's ARL disclosures, claiming that they failed to include disclosure about the indefinite nature of the renewal obligation, the recurring charge amount and the possibility that it may change over time, the length of the renewal term, and the cancellation policy. Whoop's 30(b)(6) designee admitted that the checkout page ARL disclaimer (a) was the smallest text on the page, with no surrounding text of the same size; (b) was not set off by boxes, symbols, or other marks; (c) did not state the renewal price or disclose that the price may change; and (d) did not specify the number of times the membership would renew or that it would renew indefinitely. Giacalone Dep. at 103:20–105:7, 106:12–107:6, 109:7–15.

The admissions by Whoop's 30(b)(6) designee are substantial, but may be counterbalanced by the ARL's good faith safe harbor. Section 17604(b) provides that a business that "complies with the provisions of this article in good faith" is not subject to civil remedies for an ARL violation. Bus. & Prof. Code § 17604(b). The good faith question is inherently factual and cannot be resolved as a matter of law on this record. See Roz v. Nestle Waters N. Am., Inc., 2017 WL 6942661, at *3 (C.D. Cal. Dec. 6, 2017) (denying summary judgment where there were "disputed facts regarding [defendant's] good faith and substantial compliance with" different California automatic purchase renewal statute with similar good faith safe harbor provision). It is evident that Whoop disclosed at least some terms of the auto-renewal policy at checkout, followed those disclosures with order confirmation emails containing further auto-renewal terms and access points to more detailed information and cancellation mechanisms, and sent reminder emails before renewal charges. See Sanderson Exs. 4, 8–10. Sanderson responds that, at least with respect to the renewal reminder emails, such reminders were buried between the high volume of general marketing emails sent to consumers. See Sanderson Opp. to MSJ at 23–24; Whoop Ex. 16; Sanderson Ex. 21 (listing certain customer complaints regarding autorenewals, including that ███████████

19

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████ A factfinder could reasonably conclude that Whoop's disclosure scheme fell short of the ARL's specific requirements in ways that defeat the good faith defense, or that the overall effort evidences a genuine attempt at compliance. That determination involves a fact-intensive inquiry and is not available at summary judgment.

For the foregoing reasons, neither party is entitled to summary judgment on the misrepresentation or actionable omission element of Plaintiff's CLRA claim. The Court accordingly **DENIES** summary judgment to both parties as to the misrepresentation or actionable omission element of Plaintiff's CLRA claim.

### 2.    Materiality

To establish materiality, Sanderson must demonstrate that Whoop's alleged misrepresentations or omission were likely to mislead "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances." Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003)); Vioxx, 180 Cal. App. 4th at 129. A bare technical violation of the ARL does not, without more, satisfy this standard. See Friedman v. Michaels, 2019 U.S. Dist. LEXIS 233080, at *32 (C.D. Cal. Oct. 24, 2019) ("Certainly, the Court is not aware of any case even suggesting that a violation of the ARL necessarily amounts to a violation of the FAL or CLRA (or that aspect of the UCL that also relies upon the 'reasonable consumer' standard)."). Whether a business practice is deceptive to a reasonable consumer is ordinarily a question of fact for the factfinder. Williams v. Gerber Prods. Co., 552 F.3d 934, 938–39 (9th Cir. 2008); Balser v. Hain Celestial Grp., Inc., 640 F. App'x 694, 696 (9th Cir. 2016). Both parties present evidence on this question, and neither has demonstrated the absence of a genuine dispute of fact.

Sanderson argues that Whoop's alleged violations of the ARL's auto-renewal

disclosure requirements establish that Whoop's disclosures are misleading as a matter of law. Sanderson relies on <u>Hinojos</u> for the proposition that courts must defer to legislative determinations that certain practices are misleading. Sanderson MSJ at 21–22 ("[T]he legislature's decision to prohibit a particular misleading advertising practice . . . means that the legislature has deemed that practice likely to mislead reasonable consumers; otherwise there would be no need to prohibit it."); see <u>Hinojos v. Kohl's Corp.</u>, 718 F.3d 1098, 1107 ("Moreover, the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and the courts must defer to that determination."). Sanderson's argument overestimates the applicability of <u>Hinojos</u> to this particular case. That decision was limited to whether the plaintiff had "suffered an economic injury" sufficient to confer statutory standing under the UCL and FAL, which depended in part on whether the alleged misrepresentation was material. <u>See Hinojos</u>, 718 F.3d at 1107. It does not stand for the proposition that any violation of a consumer protection statute automatically satisfies the reasonable consumer test for a separate statutory claim. The ARL, crucially, does not create its own private right of action. The California legislature chose to divert enforcement through statutes like the CLRA and FAL which impose additional elements, including the reasonable consumer standard. <u>See Johnson v. Pluralsight, LLC</u>, 728 F. App'x 674, 676 (9th Cir. 2018) (mem.). If bare ARL violations sufficed to establish CLRA materiality as a matter of law, that entire legislative structure would be circumvented.[4]

The parties' evidence on the reasonable consumer question points in opposite directions, indicative of a genuine dispute of material fact. Sanderson offers Whoop's own business records showing approximately 27,242 California subscriptions that were

---

[4] It does not follow, however, that the ARL violation is *irrelevant* to the materiality inquiry. The legislature's determination that inadequate auto-renewal disclosures are harmful to consumers is meaningful and may shed light on the reasonable consumer question. But it is not, standing alone, dispositive of the materiality element.

United States District Court
Northern District of California

automatically renewed but unused during the renewal term.  Sanderson Opp. to MSJ at 16; Todd Expert Report ¶ 11 ("From the Class autorenewal invoices, I identified ███ autorenewal invoices and ███ subscriptions associated with the No Use Autorenewal subclass.").  Sanderson also points to more than 100 consumer complaints in Whoop's records expressing confusion or frustration with automatic renewal and the difficulty in cancelling automatically renewing subscriptions.  Sanderson Opp. to MSJ at 17; Sanderson Ex. 21.  Sanderson argues that it is reasonable to infer, from the high volume of unused subscriptions, that many of these consumers did not know they were being charged.  Cf. FTC v. David, Inc., 2025 WL 2698698, at *11 (C.D. Cal. Sept. 12, 2025) (finding that consumer complaints showing consumer confusion "highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances") (quoting FTC v. Cyberspace.com LLC, 453 F.3d 1196, 1201 (9th Cir. 2006)).

Whoop challenges Sanderson's evidence as to this point, primarily by observing that non-use of a product during a renewal period does not, without more, establish consumer confusion at the time of sign-up.  Whoop Reply iso MSJ at 12–13.  For example, non-use is consistent with product defects and changed personal financial circumstances.  See id.; Sanderson Ex. 21.  Whoop also offers the expert opinion of Dr. Keith Wilcox, who concluded that "many, if not most" reasonable consumers would have expected the Whoop membership to automatically renew.  Wilcox Report (Dkt. 96-2) ¶ 90.  Whoop also points to high usage rates among class members during their initial commitment periods, with an average cycle upload rate of ███, as evidence of consumer engagement inconsistent with surprise upon auto-renewal.  See Whoop Reply iso MSJ at 11 ("Here, the *vast majority* of class members habitually used their Whoop membership prior to renewing.  Members averaged cycle uploads of ███ of days in their initial commitment period.") (emphasis in original).  Of course, "many, if not most" does not resolve the question for Whoop, as a legally significant portion of users could still have been misled, and high usage during the initial period does not establish as a matter of law that those same consumers understood that they would be automatically billed for a further subscription

22

term.

The competing evidence on materiality presents precisely the kind of factual dispute that is inappropriate for resolution at summary judgment.  Accordingly, the Court **DENIES** summary judgment as to both parties on the materiality element of Plaintiff's CLRA claim.

### 3.    Actual Reliance

The CLRA requires proof of actual reliance by the class representative.  See, e.g., Hodsdon v. Mars, Inc., 162 F. Supp. 3d 1016, 1022 (N.D. Cal. 2016), aff'd, 891 F.3d 857 (9th Cir. 2018); Valentine, 783 F. Supp. 3d at 1214–15; Noohi, 146 F.4th at 868 (requiring actual reliance, but clarifying that under the CLRA, "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.") (emphasis added).  To establish actual reliance, Sanderson must show that the alleged misrepresentation or nondisclosure was "an immediate cause" of his injury-producing conduct, meaning that "in all reasonable probability" he would not have engaged in the conduct had the information been accurately disclosed.[5]  See In re Tobacco II Cases, 46 Cal. 4th 298, 326 (Cal. 2009); Valentine, 783 F. Supp. 3d at 1215.  Where evidence demonstrates that the plaintiff actually knew the information that they allege was omitted, there is no basis for an inference of reliance as to the class, and the claim cannot proceed.  See Pokrass v. The DirecTV Grp., Inc., 2008 WL 2897084, at *4 (C.D. Cal. July 14, 2008) (citing Mass. Mutual Life Ins. Co. v. Super. Ct., 97 Cal. App. 4th 1282, 1294–95 (Cal. Ct. App. 2002)).  Like the other CLRA elements, the record does not permit summary judgment as to the element of actual reliance.

Sanderson's deposition testimony is direct: "Had I known I was having auto renew .

---

[5] The reliance requirement is distinct from the materiality requirement discussed above.  If Sanderson establishes that Whoop's misrepresentations were material to a reasonable consumer, an inference of class-wide reliance may arise as to the absent class members.  But that inference does not satisfy Plaintiff's obligation to demonstrate personal reliance.  See Lytle, 114 F.4th at 1022 ("Although reliance and materiality are separate elements, under the CLRA, a plaintiff can create a presumption of reliance by demonstrating a material misrepresentation was made to the entire class.").

. . I would not have purchased — I would not have used the service, the band, had I known that up front." Sanderson Dep. (Dkt. 99-3) at 134:9–13.  He similarly testified "had I known or had I saw that was auto renew, especially for that amount, I would not have proceeded with the purchase." Id. at 192:4–15.  While Whoop points out that Sanderson must be familiar with auto-renewing subscriptions as a member of Equinox and Amazon Prime, and that he continued using his Whoop even after the auto-renewals, the testimony suffices to establish a triable issue and Sanderson's credibility is to be determined by a factfinder.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); Goertzen v. Great Am. Life Ins. Co., 2017 WL 2378047, at *6 (N.D. Cal. June 1, 2017).

Whoop identifies substantial amounts of circumstantial evidence that, in its view, demonstrates that Sanderson was aware that his membership would automatically renew. First, Whoop's records indicate that a renewal reminder email with the subject line "Your Membership is About to Renew" was sent to Sanderson's email account on May 23, 2022, and that the email was opened from his account the following morning.  See Whoop Exs. 16–17; Giacalone Dep. at 339:1–342:25.  Another such reminder email bears the subject line "1 Month Left In Your Membership" and states in large, all-cap bold letters: "Let's Keep Improving Together."  Unlike the May 23, 2022 email, the subject line of the latter email solely warns the user that their membership is coming to an end – it does not warn the user that their membership will renew.  See Sanderson Ex. 12.  Second, Sanderson continued uploading data from his Whoop device for approximately ten months after the first automatic renewal in June 2022, until April 2023, without raising any concern about having his membership automatically renewed.  See Whoop Ex. 15.  Third, even when Sanderson contacted Whoop's membership services team in July 2023, his stated concern was that his Whoop device no longer held sufficient charge, not that he had been unknowingly charged for renewals.  Whoop Ex. 21 ("I guess my biggest concern that caused me to cancel my subscription is both the original whoop and the whoop 4.0 don't

United States District Court
Northern District of California

United States District Court
Northern District of California

charge anymore so I'm unable to use them."). Fourth, Sanderson was already enrolled in several other automatically renewing subscriptions, including for Equinox gym and Amazon Prime, that he understands to renew automatically. Sanderson Dep. at 35:3–25, 37:14–38:24. Fifth, Whoop points out that Sanderson is a financial advisor who should have observed the automatic renewal payments through his bank statements. Whoop Opp. to MSJ at 11. The combination of renewal reminders that were opened followed by months of continued device use is strong circumstantial evidence supporting a finding of actual knowledge.

Sanderson offers convincing responses to these points that prevent the Court from granting summary judgment, however. First, reliance is evaluated at the moment of the initial omission — i.e., the point of purchase — rather than at the point of subsequent communications. Mansfield v. StockX LLC, 802 F. Supp. 3d 1143, 1154 (N.D. Cal. 2025). A subsequent disclosure by the defendant does not retroactively cure the omission that influenced the consumer's original decision to purchase a product or subscribe to a service. See id. Sanderson's testimony is that he would not have purchased a Whoop subscription in the first instance, had the auto-renewal terms been clearly and conspicuously disclosed at checkout. See Sanderson Dep. at 134:9–13, 192:4–15. With respect to Sanderson's post-purchase conduct, Sanderson testified that he did not realize he needed an active membership to continue uploading data from his Whoop device, which helps explain his continued use without awareness of a renewed subscription. Sanderson Dep. at 203:6–11. As to the reminder email, the email is dominated by large text stating "Renew Today" and "New, Lower Prices" alongside a promotional image with a prominent red "Renew My Membership" button. Sanderson Ex. 10. Sanderson convincingly points out that the email was styled in part as a marketing communication, and it was sent alongside "at least ninety marketing emails sent to Plaintiff's account." Sanderson Reply iso MSJ at 10; Whoop Ex. 17. Accordingly, a reasonable factfinder could credit Sanderson's apparent failure to recognize the auto-renewal notice even if he in fact opened the email. Finally, familiarity with other automatically renewing subscription

25

services does not establish, as a matter of law, that a consumer knew Whoop's subscription would work the same way. Not all subscriptions automatically renew, and a consumer could reasonably fail to appreciate the auto-renewal structure of any particular service.

Sanderson's testimony and the circumstantial evidence offered by Whoop are in genuine tension with one another. That is precisely the kind of factual dispute that must be submitted to the factfinder. The Court therefore **DENIES** summary judgment as to both parties on the reliance element of Plaintiff's CLRA claim.

4.     Damages

Because the predicate elements of the CLRA claim remain in genuine dispute, the question of damages is not yet ripe for final resolution. But both parties have briefed the proper measure of damages as a matter of law, and the Court may address the dispute to guide the parties in advance of trial.

Sanderson seeks a full refund of all automatic renewal charges, which Whoop's own expert calculated at ███ million. Sanderson MSJ at 26–27; McGahee Report ¶ 65 ("I find that there are ████ memberships and a total of ██████ automatic renewal invoices associated with the Class between October 25, 2019 and July 24, 2025. These invoices total ████ million."). Whoop argues that damages must be reduced to account for the value that class members actually received during their renewal periods. Whoop Opp. to MSJ at 19–21. Whoop offers alternative calculations, ranging from approximately ████████████████████ based on various usage and offset-based theories. Id.; McGahee Report ¶ 65.

Whether a full refund accurately captures the injury to class members who actively used their memberships during auto-renewal periods, particularly in light of evidence that members averaged cycle uploads on ████ of days in their initial commitment period and that members continued using their devices well into their renewal terms, are questions of fact that cannot be resolved on this record. Accordingly, neither party is entitled to

26

summary judgment on the measure of damages.[6]

\*       \*       \*

Accordingly, the Court **DENIES** summary judgment as to both parties on the CLRA claim.  The claim may proceed to trial on all four elements.  The Court also **DENIES** Plaintiff's request for partial summary judgment, presented at the June 26, 2026 hearing, on the threshold question of whether Whoop violated the ARL as a matter of law.  Genuine disputes of material fact persist as to several components of the ARL compliance question, as described above.  These are questions of fact for the jury.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment in its entirety, and **GRANTS IN PART AND DENIES IN PART** Defendant's motion.  The Court **GRANTS** Defendant's motion to the extent it seeks dismissal of Plaintiff's UCL and FAL claims, and the CLRA claim to the extent it seeks equitable restitution or injunctive relief, for lack of equitable jurisdiction and **DISMISSES** those claims **WITHOUT PREJUDICE** to refiling in state court.  The Court **DENIES** Defendant's motion in all other respects.

///

///

///

///

///

///

---

[6] Sanderson separately relies on § 17603, which provides that where a consumer's "affirmative consent" has not been obtained in compliance with the ARL, any goods or services delivered pursuant to the unauthorized renewal shall be treated as "unconditional gifts" entitling the consumer to a full refund.  Sanderson MSJ at 25.  Whoop disputes that § 17603 entitles the class to full refunds as a matter of law, and that the predicate ARL violation has been established as a matter of law.  Whoop Opp. to MSJ at 21–24.  Because the underlying question of ARL compliance remains a disputed issue of fact, this dispute cannot be determined at summary judgment either.  The Court need not resolve whether § 17603 independently mandates full refunds as a legal matter until the jury resolves the question of whether Whoop's disclosures were non-compliant and whether the good faith defense applies.

United States District Court
Northern District of California

**IT IS SO ORDERED**.


Dated: July 2, 2026


_____
CHARLES R. BREYER
United States District Judge